Finkel v. Palm Park, Inc., 2019 NCBC 37.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | 17 CVS 14515 |

DAVID FINKEL, HD FUNDING, INC., and HORIZON FUNDING, LLC,

        Plaintiffs,

    v.

PALM PARK, INC., NATHAN BYELICK, MARGARET BYELICK, OAK CREST PROPERTY MANAGEMENT, INC., and THE OAKS AT NORTHGATE, LLC,

        Defendants.

**ORDER AND OPINION ON PLAINTIFFS' AND DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT**

THIS MATTER is before the Court on Plaintiffs' Motion for Partial Summary Judgment, ("Plaintiffs' Motion", ECF No. 62), and Defendants' Motion for Partial Summary Judgment, ("Defendants' Motion", ECF No. 67) (together, the "Motions").

THE COURT, having considered the Motions, the briefs and evidence filed in support of and in opposition to the Motions, the arguments of counsel at the hearing, and other appropriate matters of record, CONCLUDES that Plaintiffs' Motion should be GRANTED, in part, and DENIED, in part, and Defendants' Motion should be DENIED, in the manner and for the reasons set forth below.

> *Smith Moore Leatherwood LLP, by Mark A. Finkelstein, Esq. for Plaintiffs David Finkel, HD Funding, Inc., and Horizon Funding, LLC.*
>
> *Parry Tyndall White, by James C. White, Esq. for Defendants Palm Park, Inc., Nathan Byelick, Margaret Byelick, Oak Crest Property Management, Inc., and The Oaks at Northgate, LLC.*

McGuire, Judge.

## I.  FACTS AND PROCEDURAL HISTORY

### A. The Parties

1.  Plaintiff David Finkel ("Finkel") is a resident of Wyoming and a member and the manager of Plaintiff Horizon Funding, LLC ("Horizon"), a Wyoming limited liability company.  Finkel also is a shareholder and the president of Plaintiff HD Funding, Inc. ("HD Funding").  (First Am. Compl., ECF No. 31, at ¶¶ 1–2, "FAC".)

2.  Defendant Nathan Byelick ("Nathan") is a citizen and resident of Chatham County, North Carolina, and is the president of Defendant Oak Crest Property Management, Inc. ("Oak Crest").  Oak Crest is a North Carolina corporation with its principal place of business in Wake County.  Nathan and his wife, Defendant Margaret Byelick ("Margaret"), are the sole shareholders of Oak Crest (collectively, Nathan and Margaret are referred to as the "Byelicks").

### B. Organization and Membership of "TONG"

3.  In 2005, Finkel, the Byelicks, and a third individual not involved in this suit named Peter Conti, organized The Oaks at Northgate, LLC ("TONG"), a North Carolina limited liability company.  (First D. Finkel Aff., ECF No. 52, at ¶ 10.) Though Finkel and the Byelicks signed the TONG Operating Agreement, (ECF No. 11, at pp. 33–34), neither Finkel nor the Byelicks directly owned a membership interest in TONG.  Instead, Finkel owned his membership interest in TONG through Horizon, and the Byelicks owned their membership interest in TONG through Oak Crest.  (*See Id.* at ¶¶ 21–22.)  In 2008 Peter Conti transferred his interest in TONG in equal parts to Horizon and Oak Crest.  (*Id.* at ¶ 10; Second D. Finkel Aff., ECF No.

64, at ¶¶ 3—4.) Following Conti's transfer of his interest, Horizon owned a 37.5% interest in TONG, and Oak Crest owned a 62.5% interest. (ECF No. 64, at ¶¶ 3–4.)

4.  The TONG Operating Agreement ("Operating Agreement") names the Byelicks as the initial Managers of TONG. (ECF No. 11, at p. 36; ECF No. 31, at ¶¶ 5, 6.) The Operating Agreement provides that Managers have broad authority to manage and control the business and operations of TONG. In addition, the Operating Agreement provides that the Managers shall "[b]e under a fiduciary duty to conduct the affairs of [TONG] in the best interests of [TONG] and the Members, including the safekeeping and use of all of [TONG]'s property." (ECF No. 11, at p. 9.)

5.  The Operating Agreement also provides procedures for transferring membership interests and the effects of failing to follow those procedures. Article Eleven of the Operating Agreement requires a transferor-member to get prior written approval from the other members before transferring a membership interest. The other members are prohibited from consenting to the proposed transfer "unless the proposed transferee . . . furnished the Company with an opinion of counsel, satisfactory in form and substance to such Members, that neither the offering nor the proposed transfer will violate any federal or applicable state securities law and" will not jeopardize TONG's partnership tax treatment. (*Id.* at p. 22 sec. 11.2.)

6.  After obtaining proper written consent of all members but prior to the actual interest transfer, whether or not the proposed transferee actually furnished the required satisfactory opinion of counsel, the proposed transferee must "offer each and every one of the other Members the first right of refusal to acquire the

Membership Interest that the proposed transferee decides to transfer." (*Id.* at sec. 11.2.1.) The Right of First Refusal section of the Operating Agreement outlines the methods for determining the purchase price, and states that the Members shall have thirty days to purchase the proposed transferor's interest, before the proposed transferor may sell their interest to an unrelated party. (*Id.*) The Operating Agreement provides that if the transfer of "any Membership Interest" is not made properly, it "shall be deemed invalid, null and void, and of no force and effect." (*Id.* at sec. 11.1)

7.      Once the membership interest is transferred to a non-member pursuant to Section 11.2, the transferee can only be admitted as a member of TONG by obtaining the written consent of TONG's members and managers, accepting the terms of the Operating Agreement, and paying any costs incurred in making them a member. (*Id.* at p. 23 sec. 11.4.) Unless and until the transferee is admitted as a member pursuant to Section 11.4, "the transferee of a Membership Interest shall not be entitled to any rights, powers, or privileges of a Member, except that the transferee shall be entitled to receive the distributions and allocations to which the Member would be entitled." (*Id.* at p. 22 sec. 11.3.)

8.      Article Thirteen of the Operating Agreement, titled "Buy-Sell Provisions," states that "any purported voluntary or involuntary Transfer of all or any part of a Member's Membership Interest in a manner not expressly permitted in" the Operating Agreement is a "Buy-Sell Event". (*Id.* at p. 26 sec. 13.1(d).) The Buy-Sell Provisions outline the steps that members must take following a Buy-Sell Event,

and various agreements regarding the withdrawing member's interest following the Buy-Sell Event. (*Id.* at pp. 26–27 secs. 13.2 (Buy-Sell Notice); 13.3 (Member's Purchase Option); 13.5 (Agreement on Valuation); 13.6 (Closing); 13.8 (Effect of Withdrawing Member's Interest); 13.9 (Failure to Exercise Purchase Option)).

### C. Finkel's Attempted TONG Membership Transfer

9. In 2013, Finkel attempted to transfer Horizon's membership interest in TONG to HD Funding. The parties dispute the nature and effect of the attempted transfer. Plaintiffs contend that the transfer was merely a "re-titling" of Horizon's interest to HD Funding—not a transfer as contemplated by the Operating Agreement—and that the transfer was done with the understanding and agreement of Nathan. (ECF No. 52, at ¶ 20.) Finkel contends that Nathan and TONG treated HD Funding as the member of TONG after the transfer. (ECF No. 52, at ¶¶ 20—21, 25.) Plaintiffs alternatively contend that, if the attempted transfer was void under section 11.1 of the Operating Agreement because it was improper, Horizon still retains its membership interest in TONG. (Pls.' Br. Supp. Mot. SJ, ECF No. 63, at p. 18.)

10. Defendants contend that the attempted transfer was not in compliance with the Operating Agreement because Horizon did not obtain the written consent of Oak Crest prior to transferring the interest, provide the satisfactory opinion of counsel, nor offer Oak Crest its Right of First Refusal pursuant to Section 11.2 of the Operating Agreement, and HD Funding did not obtain the written agreement of TONG's members and managers to be admitted as a member of TONG pursuant to

Section 11.4. Defendants argue, pursuant to Section 11.3, that at this time HD Funding has, at most, the right to the distributions to which Horizon would ordinarily be entitled, but HD Funding is not a member with full membership rights. (Defs.' Br. Opp. Pls.' Mot. for SJ, ECF No. 76, at pp. 17—20.)

## D. Ownership and Management of Palm Park, Inc.

11. TONG is the sole shareholder in Defendant Palm Park, Inc. ("Palm Park"). TONG purchased Palm Park in 2005, and it is TONG's only asset. Nathan is the president and Margaret is the vice president of Palm Park, and they are the only members of Palm Park's Board of Directors. (N. Byelick Aff., ECF No. 75, at ¶¶ 2, 3; M. Byelick Aff., ECF No. 74, at ¶¶ 2, 3.)

12. Palm Park has written By-Laws. (Ex. 2 to Aff. of M. Byelick, ECF No. 74 at pp. 7–17, "Palm Park By-Laws".) The Palm Park By-Laws provide that "[t]he business and affairs of [Palm Park] shall be managed by the Board of Directors . . . ." (*Id.* at Ex. 2 p. 4.) There is no dispute that Finkel agreed to allow the Byelicks to act as the Directors and Officers of Palm Park. Finkel played no part in managing Palm Park. (Second Aff. Of N. Byelick, ECF No. 69 at pp. 108—16, ¶ 19.)

13. Palm Park owns commercial real property in Wake County, North Carolina, in the form of office buildings and warehouses. (*Id.* at ¶ 7.) Several of the disputes in this lawsuit center on a commercial office building owned by Palm Park located at 1135 Kildaire Farm Road in Cary, North Carolina known as the "Lawrence Building."

14.     Palm Park retained third-party Colliers International ("Colliers") to manage the Lawrence Building. (*Id.* at ¶ 8.) Colliers was responsible for leasing space in the building, negotiating terms of the leases, and preparing, in consultation with counsel, leases and other leasing documents. (*Id.* at ¶ 9.)

15.     From 2008 through sometime in 2017, Colliers provided monthly reports to Finkel and the Byelicks regarding the operations of the Lawrence Building. (*Id.* at ¶ 19.) The reports contained detailed financial information regarding the rents received and costs and expenses paid by Palm Park. (*Id.*) There is no evidence that Finkel reviewed these monthly reports in detail, and at the hearing on the Motions, Finkel's counsel conceded that Finkel did not thoroughly review the reports because he "trusted" the Byelicks.

16.     In 2008, at the recommendation of Colliers, the Byelicks formed Kildaire Office Suites ("KOS") to be the single rent-paying tenant for the section of the Lawrence Building dedicated to office suites, rather than Palm Park renting portions of the office suites to individual tenants on a month-to-month basis. (*Id.* at ¶¶ 11—12.) KOS offers "executive office suites, conference rooms and related amenities to tenants of KOS" while "allowing [Palm Park] to keep one lease on its books and allowing otherwise empty space [in the Lawrence Building] to continue to be leased." (*Id.* at ¶¶ 14, 13.) Nathan offered Finkel an opportunity to become one of the owners of KOS, but Finkel declined. (*Id.* at ¶ 11.) "[Finkel] also indicated that he had no issue with [the Byelicks] forming such a business." (*Id.*) KOS entered into a lease with Palm Park for the second-floor office space in the Lawrence Building.

17. In 2017, Finkel and Nathan became involved in a dispute over compensation allegedly owed to the Byelicks for managing Palm Park. (*Id.* at ¶¶ 23—24.) As a result, Finkel filed this lawsuit, and undertook a thorough review of the reports, records, and operations of Palm Park. Finkel alleges that he discovered numerous instances of mismanagement and self-dealing by the Byelicks, as the Managers of TONG, that constitute breaches of their fiduciary duties owed to HD Funding or Horizon. (Pl.'s Br. Supp. Mot. Partial SJ, ECF No. 63, at pp. 8—9.) The Byelicks dispute that they have breached their fiduciary duties and claim that their actions on behalf of Palm Park and TONG are protected by the business judgment rule. (ECF No. 76, *passim*; Defs.' Br. Supp. Mot. SJ, ECF No. 68, *passim*.)

**E. Procedural History**

18. Plaintiffs filed the FAC on February 23, 2018. (ECF No. 31.) The FAC asserts claims for: (1) the valuation and sale of TONG pursuant to N.C. Gen. Stat. (hereinafter "G.S.") § 57D-6-03(d) in lieu of dissolution; (2) in the alternative, dissolution of TONG; (3) an order compelling TONG to provide access to information and records pursuant to § 57D-3-04; and (4) breaches of fiduciary duties by Nathan, Margaret, and Oak Crest. (*Id.* at ¶¶ 14–43.)

19. The Court previously issued an Opinion and Order on Defendants' Motions to Dismiss and Plaintiffs' Renewed Motion for Judgment on the Pleadings (ECF No. 58), which dismissed certain claims brought by David Finkel, individually, for lack of standing.

20.     Following discovery, Plaintiffs filed Plaintiffs' Motion and an accompanying brief in support.  (ECF Nos. 62, 63.)  Defendants filed a Brief in Opposition to Plaintiffs' Motion for Summary Judgment, (ECF No. 76), and Plaintiffs filed a Reply, (ECF No. 81).  In support of Plaintiffs' Motion, Plaintiffs also filed the Second, Third, and Fourth Affidavits of David Finkel[1], (ECF No. 64; Third Aff. of D. Finkel, ECF No. 71; Fourth Aff. of D. Finkel, ECF No. 79), the Affidavit of Richard Nordan, (ECF No. 65), and the First and Second Affidavits of James "Jay" Taylor (ECF Nos. 66, 80).

21.     Defendants also filed a Partial Motion for Summary Judgment, (ECF No. 67), and accompanying Brief in Support, (ECF No. 68).  Plaintiffs filed a Response in Opposition to Defendants' Motion for Partial Summary Judgment.  (ECF No. 70.)  Defendants did not file a Reply.  In support of Defendants' Motion, Defendants also filed the Affidavit of Margaret Byelick, (ECF No. 74), and the second and third Affidavits of Defendant Nathan Byelick, (ECF No. 69 at pp. 108—16; ECF No. 75), and the Affidavit of Donald Hyneman, (ECF No. 73)[2].

22.     On April 30, 2019, the Court held a hearing on the Motions at which counsel for Plaintiffs and Defendants appeared and argued.  The matter is now ripe for determination.

---

[1] Plaintiffs filed the first Affidavit of David Finkel with their Motion for Judgment on the Pleadings, (Finkel Aff., ECF No. 52), and continue to rely on that affidavit in support of Plaintiffs' Motion.

[2] The affidavits of Taylor, Nordan and Hyneman are the subject of motions to strike filed by the parties and are addressed by separate order issued contemporaneous with this Order and Opinion.

## II. LEGAL STANDARD

23. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. § 1A-1, Rule 56(c) (hereinafter, the North Carolina Rules of Civil Procedure will be referred to as "Rule(s)"). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008). The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim." *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835 (citations omitted).

24. "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000). The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835. However,

the nonmovant "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant]." Rule 56(e).

## III.    ANALYSIS

### A. Defendants' contention that neither Horizon nor HD Funding is a member of TONG

25.    The Court first addresses what it interprets as Defendants' argument that neither Horizon nor HD Funding is currently a member of TONG. (ECF No. 76, at pp. 17—20.) Defendants' argument is confusing, but they seem to contend that Plaintiffs lack standing to seek judicial dissolution because none of them currently are members of TONG. See G.S. § 57D-6-02(2) (only the Attorney General or a member of a limited liability company may bring a claim for judicial dissolution of an LLC). Furthermore, Defendants contend that, if they are not members of TONG, Horizon and HD Funding could not pursue claims for breaches of fiduciary duty owed to members by the Byelicks as provided for in section 3.4(c) of the Operating Agreement, or potential claims based on their status as minority members of TONG.

26.    TONG and the Byelicks admitted in their respective answers that Horizon was a member of TONG at the time it brought this lawsuit. (TONG's Answ. FAC, ECF No. 34, at ¶ 2; Byelicks' Answ. FAC, ECF No. 35, at ¶ 2.) Defendants do not argue that Horizon has ceased being a member of TONG since it filed the lawsuit. Accordingly, pursuant to the admissions of Defendants, Horizon is a member of

TONG and has standing to pursue the claims for breach of fiduciary duty and dissolution. *White v. Davis*, 163 N.C. App. 21, 28, 592 S.E.2d. 265, 270–71 (2004) ("An admission in a pleading or a stipulation admitting a material fact becomes a judicial admission in a case and eliminates the necessity of submitting an issue in regard thereto to the jury. It has long been established that judicial admissions are binding on the pleader as well as the court unless modified at the trial to prevent manifest injustice.") (internal citations and quotation marks omitted)); *Rich v. Carolina Constr. Corp.*, 153 N.C. App 149, 153, 570 S.E.2d 212, 215 (2002) ("An admission by a party in its pleading is conclusive and binding upon the parties.") (citation omitted); *Godon Constr. v. Primo Enters.*, LLC, 226 N.C. App. 200, 2013 N.C. App. LEXIS 247, at *8 (2013) (unpublished) ("A party is bound by [its] pleadings and, unless withdrawn, amended, or otherwise altered, the allegations contained in all pleadings ordinarily are conclusive as against the pleader, so that a party cannot subsequently take a position contradictory to [its] pleadings." (citation and quotation marks omitted).).

27.     With regard to HD Funding, Defendants contend that HD Funding never became a member of TONG, and cannot pursue the claims raised by Plaintiffs in this action, because Finkel did not properly transfer Horizon's membership interest to HD Funding in 2013. (ECF No. 76, at p. 18.).  It is undisputed that Finkel did not comply with the provisions of Article Eleven of the Operating Agreement when he attempted to transfer Horizon's membership interest to HD Funding.  For example, Plaintiffs did not provide evidence, nor argue, that Horizon provided Oak

Crest with the letter from counsel, obtained the written consent of Oak Crest, or offered Oak Crest their Right of First Refusal prior to the attempted transfer as required by section 11.2 of the Operating Agreement. (ECF No. 11, at p. 22 sec. 11.2.) It is also undisputed that HD Funding did not seek admission, and was not admitted, as a member of TONG pursuant to section 11.4. Finkel did not comply with the provisions of Article Eleven of the Operating Agreement, and therefore did not properly transfer Horizon's membership interest to HD Funding.

28. In response, Plaintiffs argue that, even if Finkel failed to comply with the requirements of the Operating Agreement, HD Funding should be treated as an economic interest holder in TONG and permitted to bring the claim for judicial dissolution. (ECF No. 63, at pp.10—11.) Plaintiffs also argue that Defendants should be equitably estopped from raising Finkel's failure to comply with the requirements of the Operating Agreement because Defendants have treated HD Funding as a member of TONG since 2013. (*Id*. at pp. 14—17.) While the significance of these arguments is questionable considering the Court's conclusion that Horizon is a member of TONG able to pursue Plaintiffs' claim for judicial dissolution and breach of fiduciary duty, the Court will briefly address the arguments.

29. Plaintiffs contend, without citation to any authority, that even if Horizon's full membership interests were not properly transferred, HD Funding nonetheless became an economic interest holder in TONG. Plaintiffs, relying on authority from jurisdictions other than North Carolina, claim that as an economic interest holder HD Funding can pursue a "common law equitable right to

dissolution." (*Id.* pp. 10–12.) The Court is not persuaded by Plaintiffs' argument. Providing a common law right to make a claim for dissolution to an economic interest holder circumvents North Carolina's express statutory right to seek dissolution, which is provided only to members of limited liability companies. G.S. § 57D-6-02(2) ("The superior court may dissolve an LLC in a proceeding brought by . . . [a] member[.]"). It is well-established by this Court that non-members and former members lack standing to bring claims for judicial dissolution pursuant to section 57D-6-02(2). *Azure Dolphin, LLC v. Barton*, 2017 NCBC LEXIS 90, at *18 (N.C. Super. Ct. Oct. 2, 2017); *Slaughter v. Winner Enters. of Carolina Beach, LLC*, 2019 NCBC LEXIS 1, at *25-26 (N.C. Super. Ct. Jan. 7, 2019); *Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *33 (N.C. Super. Ct. Mar. 15, 2019).

30. Plaintiffs also argue that Defendants should be equitably estopped from relying upon the argument that Horizon did not properly transfer its membership interests to HD Funding because Defendants treated HD Funding as a member after the transfer, and Finkel relied on Defendants' statements and conduct to his detriment. (ECF No. 63, at pp. 14—17.) In *Whitacre Partnership v. Biosignia, Inc.*, the Supreme Court of North Carolina held that

North Carolina courts have also long recognized the doctrine of equitable estoppel, otherwise known as estoppel *in pais*. Generally speaking, the doctrine applies when anyone, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. In such a situation, the party whose words or conduct induced another's detrimental reliance may be estopped to deny the truth of his earlier representations in the interests of fairness to the other party.

358 N.C. 1, 16–17, 591 S.E.2d 870, 881 (2004) (quotations and citations omitted).

The essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must (1) lack the knowledge and the means of knowledge as to the real facts in question; and (2) have relied upon the conduct of the party sought to be estopped to his prejudice.

*Gore v. Myrtle/Mueller*, 362 N.C. 27, 39, 653 S.E.2d 400, 408 (2007) (citing *In re Will of Covington*, 252 N.C. 546, 549, 114 S.E.2d 257, 260 (1960)).

31.    Plaintiffs presented evidence showing that following the attempted transfer of Horizon's membership interest in TONG to HD Funding, Defendants treated HD Funding as a member of TONG. In April 2014, TONG provided to Finkel separate Schedule K-1s ("K-1") for tax year 2013 for both Horizon and HD Funding. (ECF No. 52 at ¶ 21; TONG 2013 K-1, ECF No. 52 at Ex. C.) The 2013 K-1 for Horizon was marked as its "Final K-1". (ECF No. 52 at Ex. C.) The 2013 K-1 for HD Funding showed that HD Funding held a 37.5% membership interest in TONG at the beginning and end of 2013. (*Id.*) TONG has provided K-1s to HD Funding in 2015,

2016, and 2017. (ECF No. 52, at ¶ 21.) These K-1s are consistent with the notion that TONG accepted that Horizon transferred its membership interest to HD Funding in 2013, even though Horizon did not comply with the terms of Article Eleven of the Operating Agreement.

32. Plaintiffs also have presented evidence that Nathan continued to communicate with and address Finkel as a member of TONG after the transfer. (*Id.* at ¶ 25.) On July 29, 2017, Nathan sent Finkel an email regarding the potential of invoking the buy-sell provisions of the TONG Operating Agreement. (*Id.*; ECF No. 52 at Ex. D.) In the email, Nathan repeatedly refers to Finkel, although not expressly HD Funding, as owning a membership interest in and as being a member of TONG and discusses Finkel's rights and obligations as a member under the Operating Agreement. (ECF No. 52 at Ex. D.)

33. Finally, Plaintiffs have provided evidence that Finkel relied on Defendants' treatment of Finkel as a member of TONG after the attempted transfer of interest when he personally guaranteed a loan to Palm Park. (ECF No. 52, at ¶¶ 26—30.)

34. Plaintiffs, however, have not directed the Court to evidence that would establish that it is undisputed that Finkel "lack[ed] the knowledge and the means of knowledge as to the real facts in question" regarding whether he had properly complied with the requirements of Article Eleven of the Operating Agreement, and the effects of that noncompliance. *Gore*, 362 N.C. at 39, 653 S.E.2d at 408; *Yancey v. Watkins*, 2 N.C. App. 672, 674-675, 163 S. E. 2d 625, 626-627 (1968) (holding, in order

to establish equitable estoppel, "[t]he truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him").

35.     Finkel, as a signatory to the Operating Agreement, is charged with knowledge of the provisions of the Operating Agreement. *Jones v. Home Sec. Life Ins. Co.*, 254 N.C. 407, 413, 119 S.E.2d 215, 219 (1961) ("In the absence of fraud or mistake, a party will not be heard to say that he was ignorant of the contents of a contract signed by him.") (quoting *Cuthbertson v. Insurance Co.*, 96 N.C. 480, 486, 2 S.E. 258, 261 (1887); *see also, Bell v. Nationwide Ins. Co.*, 146 N.C. App. 725, 728, 554 S.E.2d 399, 401 (2001) (quoting same). In addition, Finkel had the means of acquiring knowledge of the real facts as to the procedure required to make a proper transfer of Horizon's membership interest. Although Finkel claims that he lost his copy of the Operating Agreement, he does not specify when he lost it and has not presented evidence that he did not have a copy of the Operating Agreement at the time of the attempted transfer of Horizon's interest. (ECF No. 52, at ¶ 34.)

36.     A genuine issue of material fact remains as to whether Finkel had knowledge about whether he had properly transferred Horizon's membership interests to HD Funding and what the effect of an improper transfer would be. The Court cannot grant summary judgment to Plaintiffs as to their argument that Defendants should be equitably estopped from arguing that HD Funding is not a member of TONG. Therefore, Plaintiffs' motion for summary judgment as to their equitable estoppel argument should be DENIED.

**B. Breach of Fiduciary Duty**

37.     Plaintiffs and Defendants both have moved for summary judgment on Plaintiffs' claims for breach of fiduciary duty.  (ECF No. 62, at ¶ 1; ECF No. 67, at p. 1.)  In the FAC, Plaintiffs allege that (a) Nathan breached a fiduciary duty he owed directly to Finkel individually, (ECF No. 31, at ¶ 39), (b) Oak Crest breached a fiduciary duty it owed as the majority member of TONG to Horizon or HD Funding[3] as the minority member, (*Id*. at¶  42; ECF No. 63, at pp. 7—10), and (c) the Byelicks breached fiduciary duties owed to Horizon arising from section 3.4(c) of the Operating Agreement, (ECF No. 31, at ¶ 38).

    i.  <u>Nathan's alleged breach of fiduciary duty to Finkel</u>

38.     Plaintiffs make no argument in support of their claim based on Nathan's breach of a fiduciary duty owed directly to Finkel and concede that Finkel is not seeking "any relief personally" in this lawsuit.  (ECF No. 70, at p. 17.)  Plaintiffs have abandoned this claim, and to the extent Defendants' Motion seeks summary judgment on the claim that Nathan breached a fiduciary duty he owed directly to Finkel individually, the motion should be GRANTED.

    ii.  <u>Oak Crest's alleged breach of fiduciary duty to Horizon</u>

39.     The Court next considers Plaintiffs' claim that Oak Crest breached fiduciary duties to Horizon.  To establish a claim for breach of fiduciary duty,

---

[3] The Court has determined that Horizon is a member of TONG able to raise Plaintiffs' claims, but has left open the question of whether Defendants should be equitably estopped from denying that HD Funding is a member of TONG.  Accordingly, Plaintiffs' claims on behalf of HD Funding remain potentially viable.  However, for brevity the Court will hereinafter refer to the claims raised on behalf of both Horizon and HD Funding by reference to Horizon only.

Plaintiffs must show that: (1) Defendants owed Plaintiffs a fiduciary duty; (2) Defendants breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to Plaintiff(s). *Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 68, 628 S.E.2d 15, 20 (2006).

40. The North Carolina Limited Liability Company Act "does not create fiduciary duties among members." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009). Rather, members of an LLC "are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company." *Id.* Nevertheless, Plaintiffs allege "Oak Crest, as the majority member, owed Horizon, as the minority interest holder, a fiduciary duty." (ECF No. 63, at p. 7.) In support of this contention, Plaintiffs cite *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 675 S.E.2d 133 (2009). Plaintiffs' reliance on *Kaplan* is misplaced.

41. In *Kaplan*, the plaintiff, Kaplan, was a minority member of the limited liability company at issue in the case. *Id.* at 473, 675 S.E.2d at 137. Nevertheless, the defendant-members argued that Kaplan owed them a fiduciary duty because he exercised control over the LLC as the sole source of the company's financing. *Id.* at 474, 675 S.E.2d at 137. The Court of Appeals recognized that members of an LLC generally do not owe fiduciary duties to one another, holding "[m]embers of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company. *Id.* at 473, 675 S.E.2d at 137. The Court then stated: "[a]n exception to this rule is that a *controlling* shareholder owes a fiduciary duty to minority shareholders," citing to appellate decisions that have held

that a majority shareholder in a corporation owes a fiduciary duty to minority shareholders. *Id.* (citing *Freese v. Smith,* 110 N.C. App. 28, 37, 428 S.E.2d 841, 847 (1993) and *Gaines v. Long Mfg. Co.*, 234 N.C. 340, 67 S.E.2d 350 (1951)) (emphasis added). The Court of Appeals held that Kaplan's minority membership, by itself, did not create a fiduciary duty owed to the defendant-members. *Id.*

42. In *Kaplan*, the Court of Appeals also addressed whether, despite being a minority member, Kaplan's role as the LLC's sole investor created a fiduciary duty to the other members. *Id.* at 474–77, 675 S.E.2d at 137–39. The Court noted that "although our courts have broadly defined fiduciary relationships, no [fiduciary] relationship arises absent the existence of *dominion and control* by one party over another." *Id.* at 474, 675 S.E.2d at 137 (emphasis added). The Court concluded that despite the fact Kaplan provided all of the LLC's funding, the evidence did not support the defendant-members' "contention that Kaplan exercised dominion and control over the other members so as to create a fiduciary relationship." *Id.* at 477, 675 S.E.2d at 139.

43. Some recent cases from this Court, citing and interpreting *Kaplan*, have stated that "a holder of a majority interest *who exercises control* over the LLC owes a fiduciary duty to minority interest members." *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *9 (N.C. Super. Ct. Mar. 9, 2016) (emphasis added); *see also Zagaroli v. Neill*, 2016 NCBC LEXIS 106, at *18 (N.C. Super. Ct. Dec. 29, 2016); *Island Beyond, LLC v. Prime Capital Grp., LLC*, 2013 NCBC LEXIS 48, at *14–15 (N.C. Super. Ct. Oct. 30, 2013). The scope of this exception, borrowed from precedents governing corporations,

remains unsettled. This Court has cautioned against a broad application because of the fundamental differences between LLCs and corporations. *See HCW Ret. & Fin. Servs.*, 2015 NCBC LEXIS 73, at *47 n.102; *see also Blythe v. Bell*, 2013 NCBC LEXIS 17, at *13–14 (N.C. Super. Ct. Apr. 8, 2013). Unlike a corporation, "[a]n LLC is primarily a creature of contract." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting Russell M. Robinson, II, *Robinson on North Carolina Corporate Law* § 34.01, at 34-2 to 34-3 (rev. 7th ed. 2016)). The rights and duties of LLC members are ordinarily governed by the company's operating agreement, not by general principles of fiduciary relationships. *See* G.S. § 57D-2-30 ("The operating agreement governs the internal affairs of an LLC and the rights, duties, and obligations of . . . the interest owners . . . in relation to each other"). Especially where the members have bargained for comprehensive terms to govern their relationship, the imprudent imposition of fiduciary duties could "undermine the contractual nature of an Operating Agreement." *HCW Ret. & Fin. Servs.*, 2015 NCBC LEXIS 73, at *47 n.102.

44. Even in the context of corporate shareholders, "the element of *control* is what gives rise to a fiduciary duty between the controlling shareholder and the minority." *Emergys Corp. v. Consert, Inc.*, 2012 NCBC LEXIS 19, at *21 (N.C. Super. Ct. Apr. 5, 2012) (emphasis added). In a corporation,

> [t]he holders of the majority of stock . . . have the power, by the election of directors and by the vote of their stock, to do everything that the corporation can do. Their power to . . . direct the action of the corporation places them in its shoes and . . . . imposes on [them] a correlative duty, the duty of a fiduciary or agent, to the holders of the minority of the stock, who can act only through them—the duty to exercise good faith, care, and diligence[.]

*Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344, 67 S.E.2d 350, 353 (1951). Thus, our appellate courts have held that a majority stockholder in a corporation has sufficient ability to control the corporation to presumptively find that a majority stockholder owes fiduciary duties to minority stockholders. *E.g., Id.; Loy v. Lorm Corp.*, 52 N.C. App. 428, 432, 278 S.E.2d 897, 901 (1981) (citing *Gaines*); *Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 67, 628 S.E.2d 15, 19 (2006) (same). On the other hand,

> There is little reason to believe that control presumptively goes hand in hand with a majority interest in an LLC. Parties to an LLC Operating Agreement can alter statutory default rules, and minority members of an LLC have the freedom of contract . . . to obtain minority protections not available to shareholders of [a] closely-held corporation[.]

*Strategic Mgmt. Decisions*, 2017 NCBC LEXIS 69, at *10–12 (quoting *Blythe v. Bell*, 2013 NCBC LEXIS 17, at *14 (N.C. Super. Ct. Apr. 8, 2013); *Island Beyond, LLC v. Prime Capital Grp., LLC*, 2013 NCBC LEXIS 48, at *15 (N.C. Super. Ct. Oct. 30, 2013)) (internal citations and quotation marks omitted).

45. The undisputed facts in this case establish that Oak Crest did not exercise "dominion and control" over Horizon that could give rise to a fiduciary duty. First, the Operating Agreement provides significant protections to the members of TONG. In his first Affidavit Finkel stated that TONG's minority members

insisted upon provisions giving [them], a great deal of control and protection. This concern led to the provision in Paragraph 3.3 of the Operating Agreement requiring in excess of 75% member interest approval before [Nathan] and [Margaret] Byelick, as managers, could execute any kind of document or instrument; borrow money; or enter any contract, written or oral, with a value of over $20,000 . . . . This concern also led to the insertion of a fiduciary duty from the managers to the members set out in Paragraph 3.4 (c) of the Operating Agreement and the hand-written authorization to take over management under certain conditions.

(ECF No. 52, at ¶ 11.) In other words, Finkel bargained for protections from Oak Crest, a majority member, exercising too much control over TONG.

46. The Operating Agreement also requires the vote of a "majority in interest," defined as 75% of the membership interests, to approve other actions by TONG, including *inter alia*: amending the Operating Agreement; dissolving TONG; distributing cash to the Members; acquiring by purchase, lease, or otherwise any real or personal property; and executing deeds, deeds of trust, notes, mortgages, promissory notes, and bills of sale. (ECF No. 11, at pp. 7—8.) Any compensation paid by TONG to its Managers also required approval by the Majority in Interest. (*Id.* at p. 10.) Since Oak Crest owns only a 62.5% membership interest, it cannot approve any of these actions without Horizon's support.

47. In addition, the undisputed evidence establishes that Finkel received detailed, monthly written financial reports regarding Palm Park, TONG's only asset, that showed many of the transactions that constitute the alleged breaches of fiduciary duties of which Plaintiffs now complain. This evidence of financial transparency

strongly belies any contention that Oak Crest attempted to dominate or control Horizon.

48. The Court concludes that the undisputed evidence establishes that Oak Crest did not exercise dominion or control over TONG or Horizon, and that as a result Oak Crest did not owe a fiduciary duty to Horizon. Therefore, Plaintiffs' motion for summary judgment on their claim for breach of fiduciary duty against Oak Crest should be DENIED, and Defendants' motion for summary judgment on Plaintiffs' claim for breach of fiduciary duty against Oak Crest should be GRANTED.

iii. The Byelick's alleged breaches of fiduciary duty to Horizon

49. In the FAC, Plaintiffs allege that the Byelicks breached their fiduciary duties to Horizon

> by (1) taking compensation from TONG in violation of Paragraph 3.8 of the Operating Agreement, (2) owning property in competition with TONG in violation of Paragraph 3.11 of the Operating Agreement, (3) borrowing or requesting funds without the written consent of [Horizon] in violation of Paragraph 3.3(h) and (i) [sic], (4) purchasing and leasing real or personal property without the written consent of [Horizon] in violation of Paragraph 3.3(j), (5) executing instruments and documents 14 without the written consent of [Horizon] in violation of Paragraph 3.3(k), (6) entering into other contracts with a value of over $20,000.00 without the written consent of [Horizon] in violation of Paragraph 3.3(l) and failing to meet their obligations under Paragraph 3.4 of the Operating Agreement.

(ECF No. 31, at ¶ 41.) However, in their briefs, Plaintiffs argue different alleged breaches of duty by the Byelicks, all related to their management of Palm Park, including, *inter alia*: leasing office space in the Lawrence Building to KOS for below-market rent payments; paying family expenses including gasoline charges and cell

phone bills with Palm Park funds; paying the salaries of employees who spent their time working for the Byelick's separately-owned businesses with Palm Park funds; making payments for management fees to Oak Crest Management; and charging "large quantities of unexplained expenses" to Palm Park. (ECF No 63, at pp. 5—6; ECF 70, at pp. 2—3.) Plaintiffs argue that

> [t]he Byelicks knew about their own wrongful acts including . . . misusing Palm Park assets to the benefit of their wholly-owned companies, Oak Crest and KOS. In their fiduciary roles . . . as managers of TONG, they had the authority and fiduciary duty to stop their own wrongful acts that harmed [Horizon], but they failed to do so.

(ECF No. 81, pp. 4—5.)

50.    While managers of an LLC typically have fiduciary duties to the limited liability company, not to the members, *Kaplan*, 196 N.C. App. at 473–74, 675 S.E.2d at 137, it is undisputed that the Byelicks owed a fiduciary duty to the members of TONG, including Horizon, arising from section 3.4(c) of the Operating Agreement. (ECF No. 11, at p. 9 sec. 3.4(c) ("[The managers shall] [b]e under a fiduciary duty to conduct the affairs of [TONG] in the best interests of the Company *and of the Members*, including the safekeeping and use of all the Company Property." (emphasis added).).)

51.    Defendants argue that any claim Horizon has for breach of fiduciary duty is based solely on an injury suffered by TONG and must therefore be brought only as a derivative claim. Defendants further argue that Horizon cannot show that it suffered an injury distinct from any injury sustained by TONG. (ECF No. 68, at pp. 9–11.) Defendants contend that, absent a distinct injury, Horizon cannot show

that it falls under the *Barger* exceptions, and cannot sue directly. (*Id.* at 10 (citing *Barger v. McCoy Hillar & Parks*, 346 N.C. 650, 659, 488 S.E.2d 215, 219 (1997).)

52.   Defendants' argument is incorrect on both points. First, Horizon alleges an individual claim for breach of the Byelick's contractual fiduciary obligations owed directly to Horizon. The *Barger* analysis applies only in the context of a plaintiff who "sue[s] for injuries to his corporation" and also "maintain[s] an individual action against a third party for an injury that directly affects [him]." *Barger*, 346 N.C. at 658–59, 488 S.E.2d at 219. The *Barger* analysis has no application in the context of a purely individual claim. Second, even if the Court were to apply the *Barger* analysis to Horizon's claim, Horizon could proceed with its claim because Horizon has established that the Operating Agreement created "a special duty, such as a contractual duty, between the wrongdoer and the shareholder[,]" which is one of the *Barger* exceptions. *Barger*, 346 N.C. at 658, 488 S.E.2d at 219.

53.   Defendants also argue that Plaintiffs improperly conflate the fiduciary duties the Byelicks owe to TONG with the duties they owe to Palm Park as directors and officers of Palm Park. Defendants argue that TONG and Palm Park are separate entities, so any actions the Byelicks took as officers/directors of Palm Park cannot constitute breaches of the Byelicks' fiduciary duties to TONG. (ECF No. 76, at pp. 3—5.) Under the facts present in this case, the Court disagrees. The fiduciary duty the Byelicks owed to Horizon pursuant to section 3.4(c) of the Operating Agreement expressly included the "safekeeping and use of all of [TONG's] Property." (ECF No. 11, at p. 9.) Palm Park is TONG's only property. The Byelicks' duties to TONG and

Horizon include the duty to oversee the management and operations of Palm Park. The Court agrees with Plaintiffs that "[i]n their fiduciary roles . . . as managers of TONG, [the Byelicks] had the authority and fiduciary duty to stop [or refrain from] their own wrongful acts that harmed [Horizon]" including the alleged self-dealing and mismanagement of Palm Park. (ECF No. 82, at pp. 4—5.)

54. The Court finds that the facts are undisputed and establish that the Byelicks owed Horizon a fiduciary duty under the terms of the Operating Agreement. Plaintiffs' motion for summary judgment should be GRANTED, in part, on this issue.

55. Regarding the elements of breach of the duty and injury to Horizon, Plaintiffs have presented evidence of several actions by the Byelicks in their management of Palm Park that might constitute breaches of their fiduciary duties that injured Horizon. These include such "self-dealing" transactions as the lease between Palm Park and KOS, the payment of management fees by Palm Park to Oak Crest, and the reimbursement of allegedly personal expenses out of Palm Park funds. On the other hand, Defendants argue that: the transactions at issue are subject to the business judgment rule; Palm Park's by-laws permit their actions; that the KOS lease was the best and most lucrative use of the office space at issue; and that Finkel was aware of and condoned the Byelicks reimbursement of some expenses as a substitute for receiving salaries. (ECF No. 69, at pp. 12–14; ECF No. 76, at pp. 5–11.)

56. The Court has carefully examined the evidence submitted by the parties on the issues of breach and injury and finds that the facts underlying these essential

elements of Horizon's breach of fiduciary duty claim are in dispute and must be determined by a jury. To the extent the parties seek summary judgment on these elements of Horizon's claim for breach of fiduciary duty by the Byelicks, Plaintiffs' Motion and Defendants' Motion should both be DENIED, in part.

## C. Plaintiffs' Motion for Summary Judgment on Plaintiffs' Claim for Fair Valuation of TONG

57. For their First Claim for Relief, titled "Fair Valuation and Sale of TONG LLC Interests pursuant to [G.S. §] 57D-6-03(d)," Plaintiffs allege that "[b]oth Plaintiffs and Defendants wish to have a purchase and sale of members interests rather than dissolution" and that "[b]oth Plaintiffs and Defendants are capable, financially and otherwise, to purchase the other member's interest for fair value" ("Valuation Claim"). (ECF No. 31, at ¶¶ 15—16.) Plaintiffs further

> suggest that the proper method of determining fair value is to hire an expert to value the company at Plaintiffs' expense. If the parties cannot agree on an expert, the court will appoint one on its own. After the valuation has occurred, the parties would flip a coin in the presence of the Court. The winner will bear the cost of the valuation and have the choice of buying the other member's interest based upon the valuation or selling his interest to the other party based upon the valuation.

(*Id.* at 17.)

58. Plaintiffs move for summary judgment in their favor on the Valuation Claim. In Plaintiffs' Motion, Plaintiffs claim that "[l]iquidation of [TONG] would be necessary to protect the rights and interests of Plaintiffs unless a procedure is provided by the [C]ourt, pursuant to Section 57(d)-6-03 . . . . [and] therefore respectfully request that the Court schedule a hearing to address a court provided

procedure for the buy-out of interests pursuant to Section 57(d)-6-03." (ECF No. 62, at p. 2.)

59. As an "alternative" to the Valuation Claim, Plaintiffs make a claim for judicial dissolution pursuant to G.S. § 57D-6-02(2)(ii), which provides that "[t]he superior court may dissolve an LLC in a proceeding brought by . . . [a] member, if it is established that . . . (ii) liquidation of the LLC is necessary to protect the rights and interests of the member." Plaintiffs do not move for summary judgment on the claim for judicial dissolution, nor do they argue that the undisputed facts would support judicial dissolution at this time. In response, Defendants argue that there is no basis under section 57D-6-02(2) for judicial dissolution. (ECF No. 76, at pp. 14—17.)

60. Section § 57D-6-03 is titled "Procedure for judicial dissolution", and states in pertinent part that

> [i]n any proceeding brought by a member under clause (ii) of G.S. 57D-6-02(2) *in which the court determines that dissolution is necessary*, the court will not order dissolution if *after the court's decision* the LLC or one or more members elect to purchase the ownership interest of the complaining member at its fair value in accordance with any procedures the court may provide.

G.S. § 57D-6-03(d) (emphasis added).

61. Plaintiffs' motion for summary judgment on their Valuation Claim is an attempt to put the cart before the horse. The Court recognizes that the LLC Act authorizes the Court to determine the procedures for valuing an LLC, but that authority arises "after the court's decision" on whether "dissolution is necessary[.]" *Id*. Plaintiffs have not argued for judicial dissolution at this stage, and that issue is not properly before the Court. The Court cannot determine procedures for a fair

valuation of TONG, nor whether such procedures are necessary, prior to its determination on whether dissolution of TONG is necessary in this case. *See Brady v. Van Vlaanderen*, 819 S.E.2d 561, 564, 2018 N.C. App. LEXIS 798, *7 (interpreting virtually identical provision in the Business Corporation Act and holding "[t]he only equitable remedy a trial court may award is dissolution. [G.S.] § 55-14-30(2). A forced buyout of shares by the corporation could be triggered only if and after the court concludes judicial dissolution is an appropriate remedy. N.C. Gen. Stat. § 55-14-31(d) (2017).").

62. Accordingly, Plaintiffs' motion for summary judgment on their first claim for relief should be DENIED.

## IV. CONCLUSION

THEREFORE, IT IS ORDERED that the pending Motions are disposed of as follows:

63. To the extent Plaintiffs' Motion seeks summary judgment on their claim for equitable estoppel, the motion is DENIED.

64. To the extent Defendants' Motion seeks summary judgment on the claim that Nathan breached a fiduciary duty he owed directly to Finkel individually, the motion is GRANTED.

65. To the extent Plaintiffs' Motion seeks summary judgment on Horizon's claim for breach of fiduciary duty against Oak Crest, the motion is DENIED.

66. To the extent Defendants' Motion seeks summary judgment on Horizon's claim for breach of fiduciary duty against Oak Crest, the motion is GRANTED.

67.     To the extent Plaintiffs' Motion seeks summary judgment on the "duty owed" element of Horizon's claim for breach of fiduciary duty by the Byelicks, the motion is GRANTED.

68.     To the extent Defendants' Motion seeks summary judgment on the "duty owed" element of Horizon's claim for breach of fiduciary duty by the Byelicks, the motion is DENIED.

69.     To the extent Plaintiffs' Motion and Defendants' Motion seek summary judgment on the remaining elements of Horizon's claim for breach of fiduciary duty by the Byelicks, the motions are DENIED.

70.     Plaintiffs' motion for summary judgment on their first claim for relief for valuation is DENIED.

SO ORDERED, this the 11th day of June, 2019.


   /s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases