TAMMIE DOBSON v. HOLLY HARRIS AND J.C. PENNEY COMPANY, INC.

No. 435PA99

(Filed 16 June 2000)

**Libel and Slander— report of suspected child abuse—presumption of good faith—actual malice**

Although plaintiff-customer contends defendant-salesperson reported plaintiff's behavior of suspected child abuse or neglect to the Department of Social Services based on retaliatory motives because defendant was upset that plaintiff stated she was going to report defendant to her supervisor for her unprofessional attitude, the Court of Appeals erred in reversing summary judgment in favor of defendants on the slander per se claim because: (1) N.C.G.S. § 7A-543 (now N.C.G.S. § 7B-301) imposes an affirmative duty for anyone with cause to suspect child abuse or neglect to report that conduct to the Department of Social Services; (2) N.C.G.S. § 7A-550 (now N.C.G.S. § 7B-309) provides immunity from liability to those who act in accordance with the reporting statute, and the statute presumes the reporter's good faith; and (3) plaintiff did not meet her burden under N.C.G.S. § 8C-1, Rule 301 to go forward with evidence to show defendant's bad faith or actual malice by her subjective assessment of defendant's motives.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 134 N.C. App. 573, 521 S.E.2d 710 (1999), affirming in part and reversing and remanding in part an order for summary judgment entered 2 July 1998, by Spainhour, J., in Superior Court, Guilford County. Heard in the Supreme Court 18 April 2000.

*James A. Dickens for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, L.L.P., by Jon Berkelhammer and Shannon R. Joseph, for defendant-appellant Holly Harris.*

FREEMAN, Justice.

This case concerns provisions in the North Carolina General Statutes, N.C.G.S. § 7A-543 (1995) (repealed and recodified as

N.C.G.S. § 7B-301 (1999)),[1] that require anyone suspecting child abuse or neglect[2] to report that behavior to the Department of Social Services. Further, this case examines the rigor of statutory immunity from civil or criminal liability for a person reporting such abuse or neglect, as well as that of a statutory presumption of good faith, codified in N.C.G.S. § 7A-550 (now N.C.G.S. § 7B-309 (1999)). It is clear that the legislative intent of these statutes is that citizens are to be vigilant in assuring the safety and welfare of the children of North Carolina. We therefore conclude that such policy compels a significant evidentiary burden for those who challenge the presumption that people who report such abuse or neglect do so in good faith.

The circumstances giving rise to this lawsuit arose in May 1997 in a J.C. Penney department store. Defendant Harris worked at the catalogue-layaway counter. Plaintiff, accompanied by her fifteen-month-old child, came to the store to pay for and pick up an item she had put on layaway. Defendant Harris retrieved the wrong item and mistakenly reported to plaintiff the balance due. Neither she nor defendant Harris realized the error until after plaintiff had written her check. When plaintiff did so, however, she berated Harris, who apologized and retrieved the proper item. As it was more expensive, plaintiff had to rewrite a check for the correct amount. Plaintiff alleged that defendant Harris' unprofessional attitude spurred her to ask for the name of Harris' supervisor; Harris obliged. Meanwhile, plaintiff's child had become restive, and plaintiff reportedly yelled at the child, picked her up off the counter where she had been sitting, and slammed her back down. Shortly thereafter, plaintiff and her child left the store.

The parties' accounts differ as to the actual danger threatened the child by her mother's treatment of her at the store, but it sufficiently alarmed defendant Harris that she subsequently notified a

---

1. Effective 1 July 1999, for acts committed on or after that date, the General Assembly recodified the North Carolina Juvenile Code by repealing all existing statutory provisions, including those from chapter 7A cited in this opinion, and adding them into new chapter 7B. Act of Oct. 27, 1998, ch. 202, pt. III, secs. 5-6, pt. XIV, sec. 37(b), 1998 N.C. Sess. Laws 695, 742, 895. The acts in this case were committed in May 1997; thus, the pertinent statutes in this opinion reflect the codification in effect at that time. Where applicable, we have added a parenthetical indicating the new statute number.

2. The statute specifies a child "abused, neglected, or dependent, as defined by G.S. 7A-517 [now N.C.G.S. § 7B-101 (1999)]." N.C.G.S. § 7A-543. Our use of the phrase "child abuse or neglect" incorporates by reference the definitions of all three situations as stated in that statute.

**DOBSON v. HARRIS**

[352 N.C. 77 (2000)]

representative of the Guilford County Department of Social Services (DSS). The representative requested the name and address of plaintiff, which defendant Harris obtained from plaintiff's check.

Plaintiff was informed by DSS that a complaint had been made against her for abuse and neglect of her child, and an investigation was initiated that ultimately lasted some two months.

In her complaint and affidavit, plaintiff accused defendant Harris of reporting her to DSS in retaliation for her requesting the name of Harris' supervisor, and she sued Harris and J.C. Penney as *respondeat superior* for damages due to slander *per se* and the intentional infliction of emotional distress.

In her answer and verified responses to interrogatories, defendant Harris asserted that she had honestly reported her perception of plaintiff's actions to the proper parties and that her report was "made in good faith, without malice, pursuant to a moral and social duty to make such statements." The qualified privilege afforded such statements, she averred, barred plaintiff's claim for slander *per se*.

The trial court granted defendants' motion for summary judgment. The Court of Appeals affirmed the grant of summary judgment in favor of defendant J.C. Penney and in favor of defendant Harris as to intentional infliction of emotional distress. It reversed summary judgment on plaintiff's claim against defendant Harris for slander *per se* and remanded for trial on that issue.

This Court granted defendant Harris' petition for discretionary review, which raised the single question whether the facts alleged in plaintiff's complaint and affidavit supporting her claim for slander *per se* were sufficient to overcome the statutory presumption of defendant's good faith in reporting child abuse or neglect.

False accusations of crime or offenses involving moral turpitude are actionable as slander *per se*. *Penner v. Elliott*, 225 N.C. 33, 34, 33 S.E.2d 124, 125 (1945). As a preliminary matter, we agree with the Court of Appeals in the case *sub judice*, 134 N.C. App. at 580, 521 S.E.2d at 716, that child abuse is one such crime or offense " 'involv[ing] an act of inherent baseness in the private, social, or public duties which one owes to his fellowmen or to society, or to his country, her institutions and her government.' " *Grievance Comm. v. Broder*, 112 Conn. 269, 275, 152 A. 292, 294 (1930) (quoting *Kurtz v. Farrington*, 104 Conn. 257, 262, 132 A. 540, 541 (1926)), *quoted in State v. Mann*, 317 N.C. 164, 170, 345 S.E.2d 365, 369 (1986). It is this

**DOBSON v. HARRIS**

[352 N.C. 77 (2000)]

perception of child abuse or neglect as "inherently base" that not only underpins serious criminal classifications for those who commit it, see N.C.G.S. §§ 14-318.2 (1999) (Class 1 misdemeanor), 14-318.4 (1999) (felony), but also has prompted the promulgation of laws like those before us here, which recognize that, when a child's welfare is jeopardized, swiftly engaging the state's protective mechanisms is paramount.

Government has no nobler duty than that of protecting its country's lifeblood—the children. For this reason, all fifty states have codified mandatory reporting statutes that impose a duty to report suspected or observed child abuse upon specified persons or institutions, particularly those that work regularly with children. See Danny R. Veilleux, Annotation: Validity, Construction, and Application of State Statute Requiring Doctor or Other Person to Report Child Abuse, 73 A.L.R.4th 782 (2000). North Carolina's reporting statutes, however, impose this duty universally—everyone, not just officers of the state, physicians, teachers, administrators, social workers or clergy, shares the state's role as parens patriae in this regard for all North Carolina children.

Affirming that distinguishing adults from children for purposes of definitions under the Juvenile Court Act, N.C.G.S. § 7A-278 (1969), passes muster under the Equal Protection Clause, Justice Huskins wrote in In re Walker, 282 N.C. 28, 39, 191 S.E.2d 702, 710 (1972), "it is our view that the desire of the State to exercise its authority as parens patrieae and provide for the care and protection of its children supplies a 'compellingly rational' justification for the classification." The doctrine of parens patriae in the context of parental autonomy versus the child's welfare was similarly noted by Justice Lake in In re Williams, 269 N.C. 68, 79, 152 S.E.2d 317, 326 (1967): "neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the State as parens patriae may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor and in many other ways.", quoting with approval Prince v. Massachusetts, 321 U.S. 158, 166, 64, S. Ct. 438, 442, 88 L. Ed. 645, 652 (1949). North Carolina's reporting statutes similarly give rein to this doctrine, providing procedures clearly intended to encourage the participation of all citizens in swiftly detecting and remedying child abuse or neglect.

N.C.G.S. § 7A-543 (now N.C.G.S. § 7B-301) imposes an affirmative duty for anyone with "cause to suspect" child abuse or neglect to

report that conduct to the department of social services. It provides, in pertinent part:

> Any person or institution who has cause to suspect that any juvenile is abused, neglected, or dependent, as defined by G.S. 7A-517 [now 7B-101] . . . shall report the case of that juvenile to the Director of the Department of Social Services in the county where the juvenile resides or is found. . . . The report shall include information as is known to the person making it including . . . information which the person making the report believes might be helpful in establishing the need for protective services or court intervention.

N.C.G.S. § 7A-543, para. 1. In order to encourage people to report circumstances that prompt them to believe a child is in jeopardy, N.C.G.S. § 7A-550 (now N.C.G.S. § 7B-309) provides immunity from liability to those who act in accordance with the reporting statute. Notably, in addition, this latter section *presumes* the reporter's good faith:

> Anyone who makes a report pursuant to this Article, cooperates with the county department of social services in a protective services inquiry or investigation, . . . or otherwise participates in the program authorized by this Article, is immune from any civil or criminal liability that might otherwise be incurred or imposed for such action provided that the person was acting in good faith. In any proceeding involving liability, *good faith is presumed.*

N.C.G.S. § 7A-550 (1995) (emphasis added).

Read without this last sentence, these two provisions together codify a "qualified or conditionally privileged communication" as recognized at common law, " '[t]he essential elements [of which] . . . are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.' " *Stewart v. Nation-Wide Check Corp.*, 279 N.C. 278, 285, 182 S.E.2d 410, 415 (1971) (quoting 50 Am. Jur. 2d *Libel and Slander* § 195 (1970)).

Just as public policy underpins the immunity provided under these statutes, so in the common law "[t]he great underlying principle of the doctrine of privileged communications rests in public policy." *Alexander v. Vann*, 180 N.C. 187, 189, 104 S.E. 360, 361 (1920), *quoted in Ponder v. Cobb*, 257 N.C. 281, 295, 126 S.E.2d 67, 77 (1962). When an otherwise defamatory communication is made " 'in pur-

suance of a . . . political, judicial, social, or personal [duty], . . . an action for libel or slander will not lie though the statement be false unless actual malice be proved in addition.' " *Ponder*, 257 N.C. at 294-95, 126 S.E.2d at 77 (quoting *Alexander*, 180 N.C. at 189, 104 S.E. at 361). In the common law, this " '[q]ualified privilege extends to all communications made *bona fide* upon any subject-matter . . . in reference to which [the communicator] has some moral or legal duty to perform.' " *Id.* at 295, 126 S.E.2d at 77 (quoting *Alexander*, 180 N.C. at 189, 104 S.E. at 361). "If the court determines as a matter of law that the occasion is privileged, defendant has 'a presumption that the statement was made in good faith and without malice.' " *Clark v. Brown*, 99 N.C. App. 255, 262, 393 S.E.2d 134, 138 (quoting *Shreve v. Duke Power Co.*, 97 N.C. App. 648, 651, 389 S.E.2d 444, 446, *disc. rev. denied*, 326 N.C. 598, 393 S.E.2d 883 (1990)), *disc. rev. denied*, 327 N.C. 426, 395 S.E.2d 675 (1990). "To rebut this presumption, the plaintiff must show actual malice." *Phillips v. Winston-Salem/ Forsyth County Bd. of Educ.*, 117 N.C. App. 274, 278, 450 S.E.2d 753, 756 (1994), *disc. rev. denied*, 340 N.C. 115, 456 S.E.2d 318 (1995); *see also Davis v. Durham City Schs.*, 91 N.C. App. 520, 372 S.E.2d 318 (1988).

Similarly, under sections 7A-543 and -550, when the statutory steps are followed, the responsibility to report suspected child abuse is conjoined with immunity from civil or criminal liability. Equally important, this responsibility, when met by complying with those requisites, is conjoined with the statutory *presumption* that such reports are made in good faith. Thus, the state interest in protecting minors from abuse and neglect is supported by strong statutory incentives to report their occurrence. *See Coleman v. Cooper*, 89 N.C. App. 188, 197-98, 366 S.E.2d 2, 8 (N.C.G.S. § 7A-550 (now N.C.G.S. § 7B-309) is intended to encourage citizens to report suspected instances of child abuse without fear of potential liability if report made in good faith), *disc. rev. denied*, 322 N.C. 834, 371 S.E.2d 275 (1988).

Significantly, the reporting statutes together provide immunity not merely *conditional upon* proof of good faith, but a "good faith" immunity, one which endows the reporter with the mandatory[3] *pre-*

3. The difference between "permissive" and "mandatory" presumptions—both rebuttable—is that with the former, the basic fact underlying the presumption has been established, but the presumed fact may or may not be found to exist; in the latter, "[once] the basic fact has been established, the presumed . . . fact *must* be found unless sufficient evidence of its nonexistence is forthcoming." Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 44, at 148 (5th ed. 1998). "[T]he only questions

**DOBSON v. HARRIS**

[352 N.C. 77 (2000)]

*sumption* that he or she acted in good faith. *See Lehman v. Stephens*, 148 Ill. App. 3d 538, 551, 499 N.E.2d 103, 112, 101 Ill. Dec. 738, 745 (1986), *appeal denied*, 113 Ill. 2d 576, 505 N.E.2d 354, 106 Ill. Dec. 48 (1987). ("good faith immunity" provided by statute allows a rebuttable presumption of good faith). Thus, the statute itself relieves the defendant of the burden of going forward with evidence of her good faith and imposes upon the plaintiff the burden to go forward with evidence of the defendant's bad faith or malice. *See* N.C.G.S. § 8C-1, Rule 301 (1999).

One purpose of summary judgment is to bring an action to an early decision on its merits, avoiding the delay and expense of trial when no material facts are at issue. *E.g., Harris v. Walden*, 314 N.C. 284, 333 S.E.2d 254 (1985); *Kessing v. National Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). This purpose is well served when the movant, who has reported child abuse or neglect in accord with statutory mandate, is accused of defamation for having done so, for there can be no disincentive to report greater than the spectre of the length and expense of a lawsuit.

Briefly, our review of the propriety of summary judgment retraces these rules: Summary judgment is properly granted when the forecast of evidence "reveals no genuine issue as to any material fact, and when the moving party is entitled to a judgment as a matter of law." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). A "genuine issue" is one that can be maintained by substantial evidence. *E.g., Kessing*, 278 N.C. 523, 180 S.E.2d 823. The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, *e.g., Goodman v. Wenco Foods, Inc.*, 333 N.C. 1, 423 S.E.2d 444 (1992), or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim, *e.g., Lowe v. Bradford*, 305 N.C. 366, 289 S.E.2d 363 (1982). The movant's papers are carefully scrutinized, *e.g., Singleton v. Stewart*, 280 N.C. 460, 186 S.E.2d 400 (1972); those of the adverse party are indulgently regarded, *id.* All facts asserted by the adverse party are taken as true, *e.g., Norfolk & W. Ry. Co. v. Werner Indus.*, 286 N.C. 89, 209 S.E.2d 734 (1974), and their inferences must be viewed in the light most favorable to that party, *e.g., Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975).

---

[as to their distinction are] . . . the quantum of rebutting evidence required and the effect on burdens of proof." *Id.* at 149, n.200.

**DOBSON v. HARRIS**

[352 N.C. 77 (2000)]

On her motion for summary judgment on plaintiff's claim of slander *per se*, defendant was entitled to immunity and to the presumption of good faith once she showed she had complied with the reporting statutes by having "cause to suspect"[4] child abuse or neglect and reporting to the DSS (and to none other) as much information known to her that might be helpful in establishing the need for the State to protect or to intervene. Thereafter, plaintiff had the burden of setting forth specific facts "by affidavits or otherwise" showing a genuine issue existed as to whether defendant had made the alleged statements with actual malice. N.C.G.S. § 1A-1, Rule 56(e) (1999). *See, e.g., Towne v. Cope*, 32 N.C. App. 660, 233 S.E.2d 624 (1977) (summary judgment appropriately entered against the plaintiff where the defendant supported motion by establishing affirmative defense of qualified privilege, and the plaintiff, who thereafter had burden of setting forth specific facts "by affidavits or otherwise" showing a genuine issue exists as to whether the defendant made the alleged statements with actual malice, relied simply on the allegations in his complaint).

On a motion for summary judgment, when the movant, charged with slander, is endowed with the presumption of good faith— whether, in this case, by a statutory presumption benefiting reporters of child abuse, *e.g., Davis v. Durham City Schs.*, 91 N.C. App. 520, 372 S.E.2d 318, or by common law presumptions benefiting public officials, *e.g., Leete v. County of Warren*, 341 N.C. 116, 462 S.E.2d 476 (1995)—sufficient evidence must be introduced by the opposing party to allow reasonable minds to conclude that the privileged party acted in bad faith or, in the case of slander *per se*, with malice. " 'Every reasonable intendment will be made in support of the presumption,' " *Huntley v. Potter*, 255 N.C. 619, 628, 122 S.E.2d 681, 687 (1961) (quoting 31 C.J.S. *Evidence* § 146), and " 'the burden is upon the party asserting the contrary to overcome the presumption by competent and substantial evidence,' " *Styers v. Phillips*, 277 N.C. 460, 473, 178 S.E.2d 583, 591 (1971) (quoting 6 N.C. Index 2d *Public Officers* § 8 (1968)).

The burden of production and the quantum of evidence that must be shown to overcome a presumption is stated in Rule 301 of the North Carolina Rules of Evidence:

---

4. Notably, this phrase gives wide margin to whatever prompts the reporter to notify DSS. By contrast with "reasonable cause to believe or suspect" in the statutes of many other states, *see* Danny R. Veilleux, *Annotation: Validity, Construction, and Application of State Statute Requiring Doctor or Other Person to Report Child Abuse,*

In all civil actions and proceedings when not otherwise provided for by statute, by judicial decision, or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption . . . . The burden of going forward is satisfied by the introduction of evidence *sufficient to permit reasonable minds to conclude that the presumed fact does not exist.* If the party against whom a presumption operates fails to meet the burden of producing evidence, the presumed fact shall be deemed proved . . . .

N.C.G.S. § 8C-1, Rule 301 (emphasis added); *see also* Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 49, at 158 ("Where only the burden of going forward is placed upon the opponent, as in Rule 301, that burden is satisfied by the introduction of evidence 'sufficient to permit reasonable minds to conclude that the presumed fact does not exist.' "). The official commentary to this rule of evidence states:

Proof of the basic fact [compliance with N.C.G.S. § 7A-543 (now N.C.G.S. § 7B-301)] not only discharges the proponent's burden of producing evidence of the presumed fact [good faith] but also places upon the opponent the burden of producing evidence that the presumed fact does not exist. If the opponent does not introduce any evidence, *or the evidence is not sufficient to permit reasonable minds to conclude that the presumed fact does not exist,* the proponent is entitled to a peremptory instruction[5] that the presumed fact shall be deemed proved.

N.C.G.S. § 8C-1, Rule 301 official commentary (emphasis added).

Evidence offered to meet or rebut the presumption of good faith must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise. If plaintiff's forecast of evidence of malice is "not sufficient to permit reasonable minds to conclude" that the reporter's presumed good faith was nonexistent, then summary judgment for defendant is proper.

---

73 A.L.R.4th 782, § 18 (2000), this phrase does not call for scrutiny, analysis, or judgment by a finder of fact.

5. In the context of a summary judgment proceeding, entitlement to a "peremptory instruction" means simply that the fact is deemed proved for purposes of the burden of production.

DOBSON v. HARRIS

[352 N.C. 77 (2000)]

It was so in this case. In her answer defendant Harris asserted the affirmative defense of "qualified immunity," or, more precisely, a statutory, good-faith immunity based upon her compliance with N.C.G.S. §§ 7A-543 and -550. That she did so comply was supported by facts described in her responses to plaintiff's interrogatories, and those particular facts were uncontradicted in the materials before the trial court.

In order to overcome the presumption of good faith that by virtue of the statute inhered to defendant's properly reporting what she saw, it was incumbent on plaintiff to show defendant's actual malice. "If plaintiff cannot meet his burden of showing actual malice, . . . privilege . . . bars any recovery for the communication, even if the communication is false." *Clark*, 99 N.C. App. at 263, 393 S.E.2d at 138.

> Actual malice may be proven by evidence of ill-will or personal hostility on the part of the declarant or by a showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity.

*Kwan-Sa You v. Roe*, 97 N.C. App. 1, 12, 387 S.E.2d 188, 193 (1990) (citation omitted). Plaintiff offered no evidence of this nature. In her affidavit, plaintiff stated that Harris reported plaintiff's behavior to DSS "because she was upset and angry that I stated to her that I was going to report her to her supervisor for her unprofessional attitude[]" "with the intent to cause me embarrassment and humiliation and harassment." At best, plaintiff described retaliatory motives for defendant's report. These conclusory averments rest, however, not on experienced or otherwise substantiated fact, but on plaintiff's subjective assessment of defendant's motivations. They are not in themselves "sufficient to permit reasonable minds to conclude that the presumed fact does not exist." N.C.G.S. § 8C-1, Rule 301; *see also Nasco Equip. Co. v. Mason*, 291 N.C. 145, 229 S.E.2d 278 (1976) (Rule 56(e) clearly precludes any party from prevailing against a motion for summary judgment through reliance on conclusory allegations unsupported by facts); *cf. Presnell v. Pell*, 298 N.C. 715, 260 S.E.2d 611 (1979) (good faith *not* presumed; complaint specifically alleged principal had falsely accused the plaintiff of distributing alcoholic beverages on school premises, then maliciously and recklessly published the rumors to the plaintiff's fellow employees notwithstanding the plaintiff's vigorous denial of these accusations and of the rumors upon which they were based; such allegations at the pleading stage served to negate the good-faith element of qualified privilege).

Although summary judgment is rarely appropriate in actions like defamation in which the litigant's state of mind, motive, or subjective intent is an element of plaintiff's claim, *e.g.*, *Proffitt v. Greensboro News & Record, Inc.*, 91 N.C. App. 218, 371 S.E.2d 292 (1988) (libel), it is most appropriate here where plaintiff, who, assuming the burden of production to negate defendant's presumption of good faith with evidence of actual malice, sets forth no specific fact showing an issue as to defendant's motive, but rests upon bare allegation and suspicion.

We hold that the trial court, in surveying the materials before it on defendant's motion for summary judgment, properly granted summary judgment to defendant Harris on the issue of slander *per se*. Viewed in the light most favorable to the nonmovant, the evidence forecast in the parties' pleadings, affidavits, and answers to interrogatories shows no genuine issue of material fact. Because defendant's compliance with the reporting statutes entitled her to immunity from civil liability, plaintiff's claim against her for slander *per se* was barred. Further, the statutory presumption of defendant's good faith remained unrebutted where plaintiff failed to adduce facts sufficient to permit reasonable minds to conclude that defendant acted with actual malice.

For the foregoing reasons, we reverse the decision of the Court of Appeals.

REVERSED.