Mason v. Mason, 2022 NCBC 24.

STATE OF NORTH CAROLINA

ORANGE COUNTY

JULIE SMITH MASON,

        Plaintiff,

v.

RICHARD S. MASON,

        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 1724

**ORDER AND OPINION ON
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

1.     **THIS MATTER** is before the Court on the 16 April 2021 filing of Plaintiff's Motion for Summary Judgment (the "Motion") brought pursuant to Rule 56 of the North Carolina Rules of Civil Procedure (the "Rule(s)").  (Pl.'s Mot. Summ. J., ECF No. 273 ["Pl.'s Mot"].)

2.     For the reasons set forth herein, the Court **GRANTS in part** and **DENIES in part** the Motion.

> *Davis Hartman Wright, LLP by John Charles Bircher, for Plaintiff Julie Smith Mason.*[1]
>
> *J.M. Cook, P.A. by J.M. Cook, for Defendant Richard S. Mason.*

Robinson, Judge.

---

[1] The Motion was filed by Pamela S. Duffy and Molly S. Whitlatch, who were counsel for Plaintiff Julie Smith Mason at the time of filing.  Subsequent to the filing of the Motion, Duffy and Whitlatch withdrew as counsel of record in this matter, (ECF No. 298), Plaintiff filed for bankruptcy protection, and John Charles Bircher was appointed as Trustee of Plaintiff's estate and appears on Plaintiff's behalf in this matter.  (*See* Not. of App. by Trustee for Bankr. Estate of Julie S. Mason, ECF No. 300.)

## I.    INTRODUCTION

3.      Plaintiff Julie Smith Mason ("Plaintiff") initiated this action in her capacity as a minority shareholder seeking the judicial dissolution of the former defendant to this action, Multiflora Greenhouses, Inc. ("MGI").  As a result of stipulations and agreements made by the parties in the course of the litigation, the remaining issue left for determination is the value of Plaintiff's interest in MGI, which is due to be paid to Plaintiff by Defendant Richard S. Mason ("Defendant").

## II.    FACTUAL AND PROCEDURAL BACKGROUND

4.      The Court sets forth here only those portions of the factual and procedural history relevant to its determination of the Motion.  The Court does not make findings of fact when ruling on motions for summary judgment.  "But to provide context for its ruling, the Court may state either those facts that it believes are not in material dispute or those facts on which a material dispute forecloses summary adjudication." *Ehmann v. Medflow, Inc.*, 2017 NCBC LEXIS 88, at *6 (N.C. Super. Ct. Sept. 26, 2017).

5.      Plaintiff filed her Complaint on 13 December 2017, asserting claims for dissolution of MGI and breach of fiduciary duty against Defendant. (Compl. 6–8, ECF No. 4.)  Specifically, Plaintiff stated that she "is entitled to judicial dissolution of [MGI], unless [MGI] elects to purchase her shares at their fair value in accordance with procedures as the court may provide pursuant to N.C.G.S. § 55-14-13." (Compl. ¶ 36.)

6.     At the time this action was initiated, Plaintiff and Defendant were married but legally separated and together owned a combined majority of the shares of MGI: Plaintiff owned 39.65% of outstanding shares and Defendant owned 39.63% of the outstanding shares.  (Compl. ¶ 8.)  Plaintiff and Defendant were also the sole directors of MGI.  (Compl. ¶ 9.)  Plaintiff acted as MGI's Vice President, Treasurer, and Secretary.  (Compl. ¶ 10.)  Defendant acted as MGI's President and CEO and managed MGI's employees, including two shareholder-employees.  (Compl. ¶ 11.)

7.     Defendant and MGI filed a joint Answer on 22 January 2018.  (Answer, ECF No. 8.)  Defendant asserted in what is titled the "Third Defense" that dissolution of MGI is not an appropriate remedy because Defendant, in his individual capacity, "is willing to purchase the Plaintiff's shares at their fair value, in accordance with such procedures as the Court may provide."  (Answer 2.)

8.     The parties submitted their Case Management Report on 21 February 2018.  (Case Management Report, ECF No. 9 ["CMR"].)  The parties represented that Defendant "is agreeable to purchase [Plaintiff's] interests in MGI for fair value pursuant to a valuation process to be agreed upon by the parties or imposed by the Court[, and] the issue before the Court is one of valuation only rather than disputing the right to dissolution."  (CMR ¶¶ 1, 3.A.)  It was made clear to the Court early in this litigation that there was an agreement between the parties that Defendant was to purchase Plaintiff's share in MGI for "fair value."  (Case Management Rep. 8, ECF No. 9.)  This agreement was later memorialized by the parties in a written stipulation.

(Joint Stip. Re. Date of Valuation of Multiflora Greenhouses, Inc. 1, ECF No. 43 ["Joint Stipulation"].)

9. On 4 May 2018, Plaintiff filed a Motion for Appointment of a Receiver or, in the Alternative, Preliminary Injunctive Relief, and Motion for Temporary Restraining Order (the "Receivership Motion"). (ECF No. 29.) Plaintiff requested that the Court appoint a receiver to oversee MGI and made a request in the alternative that the Court preliminarily enjoin Defendant and MGI from taking certain action with respect to MGI and MGI's wholly owned subsidiary, Austram, LLC ("Austram"). On 16 May 2018, Plaintiff filed a Motion for Appointment of Referee (the "Referee Motion"). (ECF No. 38.)

10. On 6 August 2018, the Court held a hearing on the Receivership Motion and the Referee Motion. (*See* ECF No. 73.) During the hearing, Defendant, through counsel, represented to the Court that a receivership was unnecessary, among other reasons, because Defendant had agreed to buy Plaintiff's shares in MGI for fair value and would make sure that the company would continue in operation by paying whatever debts and obligations came due.

11. Following the 6 August 2018 hearing, the Court entered the Order on Plaintiff's Motion for Receiver or Preliminary Injunction and Motion for Referee (the "Injunction"). (Pl.'s Mot. for Receiver or Prelim. Inj. & Mot. for Referee, ECF No. 82 ["Inj."].) The Court denied Plaintiff's request for the appointment of a receiver and a referee but granted in part Plaintiff's request for a preliminary injunction and

effectively enjoined Defendant from taking certain actions while operating MGI. (Inj. ¶¶ 16, 21, 24–25.)

12. Shortly after entry of the Court's Injunction, on 24 September 2018, MGI's attorney, without consulting with Plaintiff, filed with the United States Bankruptcy Court a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code. (ECF No. 97.)

13. On 16 April 2019, Plaintiff filed a Motion for Criminal Contempt (the "Contempt Motion") alleging that Defendant willfully and intentionally violated the Injunction entered by the Court. (ECF No. 129.)

14. On 17 April 2019, Plaintiff filed a Notice of Voluntary Dismissal without Prejudice, dismissing all of her claims against MGI. (ECF No. 137.)

15. On 26 November 2019, after a duly noticed evidentiary hearing, the Court entered its Order on Motion for Criminal Contempt Regarding Guilt (the "Contempt Order"). *See Mason v. Mason*, 2019 NCBC LEXIS 79, at *15–16 (N.C. Super. Ct. Nov. 26, 2019).

16. The Court made the following findings of fact in the Contempt Order:

43. At all times relevant herein, MGI had four shareholders, Mr. Mason, [Johannes] Lenselink, Timothy Stephens ("Mr. Stephens"), and Ms. Mason. . . . Mr. Mason informed both Mr. Lenselink and Mr. Stephens that Mr. Mason intended to put MGI into bankruptcy. However, Mr. Mason intentionally did not disclose this information to Ms. Mason. Mr. Mason intentionally directed Mr. Lenselink and Mr. Stephens not to advise Ms. Mason that he was considering filing for bankruptcy protection for MGI. Mr. Mason did this because he was worried that, armed with prior notice of Mr. Mason's intention to put MGI in bankruptcy, Ms. Mason might take steps in an attempt to thwart Mr. Mason's plan.

44. Anticipating Ms. Mason would not agree to filing for bankruptcy, Mr. Mason implemented a scheme around September 2018 to increase the number of directors from two (Mr. Mason and Ms. Mason) to four (adding Mr. Lenselink and Mr. Stephens). After increasing the size of the board, Mr. Mason intended to instruct Mr. Lenselink and Mr. Stephens to vote in favor of putting MGI into bankruptcy without the consent of or notice to Ms. Mason.

46. At the board of directors meeting on September 20, 2018, Mr. Lenselink and Mr. Stephens were elected as directors, increasing the board from two directors to four. Mr. Mason actively concealed the plan to file for bankruptcy by instructing Mr. Lenselink and Mr. Stephens to not inform Ms. Mason of the pending bankruptcy.

47. Shortly thereafter, Mr. Mason, Mr. Lenselink, and Mr. Stephens voted without a duly noticed meeting and without notifying Ms. Mason to place [MGI] into bankruptcy.

*Mason*, 2019 NCBC LEXIS, at *18–20.

17. Even in the midst of the proceedings on the Contempt Motion, Defendant recognized his obligation to purchase Plaintiff's shares in MGI. On 23 May 2018, the parties filed a Joint Stipulation Regarding Date of Valuation of Multiflora Greenhouses, Inc. agreeing that the date of valuation of MGI "for the purpose of establishing a value for Defendant Richard Mason's buy out of Plaintiff Julie Mason's shares shall be the date of the parties' marital separation, October 16, 2017." (Joint Stipulation 1.) On 3 August 2018, Defendant submitted an affidavit to the Court, which in part states "I have stipulated to the Court that I will acquire Plaintiff's stock in MGI[,]" confirming for a third time that Defendant agreed to purchase Plaintiff's share in MGI (Aff. Richard S. Mason ¶ 54, ECF No. 80 ["R. Mason Aff."].)

18. On 25 June 2019, Plaintiff filed a Status Report as to Plaintiff's Claims Against Richard Mason, in part requesting the Court address the MGI valuation issues. (ECF No. 155.)

19. On 30 July 2019, in the domestic proceedings between the parties, the parties entered into a Stipulation and Consent Order pursuant to which the parties agreed "that any claims either may have against the other regarding the value, if any, and distribution of the stock each party owns in [MGI] are within the jurisdiction of the Business Court . . . and such claims may be resolved at either party's election by asserting an appropriate claim in the pending action in the Business Court[.]" (Proposed Compl., Ex. C ¶ 3)

20. Notwithstanding this express agreement between the parties, after resolution of the Contempt Motion, Defendant filed Defendant Richard S. Mason's Motion to Dismiss and, in the Alternative, Set Aside Court Orders on 19 December 2019, requesting that the Court either dismiss the action or set aside any stipulations requiring Defendant to purchase Plaintiff's shares in MGI. (ECF No. 232.) On 26 May 2020, the Court entered the Order and Opinion on Defendant Richard S. Mason's Motion to Dismiss and, in the Alternative, Set Aside Orders denying Defendant's request. *Mason v. Mason*, 2020 NCBC LEXIS 66, at *9 (N.C. Super. Ct. May 26, 2020). Specifically, the Court stated "the Court declines to relieve Defendant from the agreement to purchase MGI's shares he made, with the advice of counsel, at the inception of this litigation." *Id.*

21.     On 12 June 2020, the Court in its discretion entered the Order on Plaintiff's Motion to Supplement Complaint denying Plaintiff's request to supplement her breach of fiduciary duty claim but permitting Plaintiff "to supplement the Complaint with allegations pertinent to the valuation of her MGI shares[,]" again limiting the scope of this litigation to the issue of the value of Plaintiff's share in MGI. (ECF No. 261.) On 10 July 2020, Plaintiff filed a Voluntary Dismissal of Second Claim for Relief Without Prejudice dismissing her claim for breach fiduciary duty. (ECF No. 262.)

22.     On 30 November 2020, the Court entered the Order on Joint Motion for Proposed Scheduling Order, implementing a schedule for the parties to engage in designation and discovery regarding experts to value Plaintiff's shares in MGI. (ECF No. 272.)

23.     On 26 January 2021, Defendant obtained a commissioned expert report rendered by Jim Turner CPA, CVA ("Mr. Turner") of Turner Business Appraisers (the "Turner Report"). The Turner Report calculated the value of MGI as of the agreed to date — 16 October 2017. (Calculation Engagement of: Multiflora Greenhouses, Inc. As of: October 16, 2017, ECF No. 273.1 ["Turner Report"].)

24.     The Turner Report includes a valuation of Plaintiff's 39.65% equity interest in MGI as of 16 October 2017. (Turner Report 4.) Using the adjusted net asset method, the Turner Report establishes MGI's total value as of 16 October 2017 as $960,600. (Turner Report 15–16.) Mr. Turner then applied a twenty percent (20%) discount for Plaintiff's lack of control over MGI (the "minority discount") and a thirty percent (30%) lack of marketability discount. (Turner Report 28, 34.) The determined

final value for Plaintiff's 39.65% interest in MGI in the Turner Report is $213,000. (Turner Report 36.)

26. On 1 March 2021, Defendant provided Plaintiff with a copy of the Turner Report in compliance with the Court's scheduling order. (Turner Report 1.) (*See* Turner Report.)

26. On 16 April 2021, Plaintiff filed her Motion for Summary Judgment, (*See* Pl.'s Mot.), along with a supporting brief, (Br. Supp. Pl.'s Mot. Summ. J., ECF No. 274), which request that the Court enter judgment in the amount of $380,640 as the fair value of Plaintiff's shares in MGI on 16 October 2017. (Pl.'s Mot. 3.) In her motion, Plaintiff explains that she arrived at the figure of $380,640 by accepting the entity valuation for MGI determined by the Turner Report and using certain other findings of the Turner Report but eliminating the minority and marketability discounts on the grounds that they are inapplicable under the circumstances.

27. On 1 June 2021, Defendant filed Defendant Richard S. Mason's Objection to Motion for Summary Judgment (the "Objection"), (Def. Richard S. Mason's Obj. Mot. Summ. J., ECF No. 280 ["Obj."]), and his brief in opposition to the Motion, (Br., ECF No. 281 ["Def.'s Br. Obj."]).

28. On 11 June 2021, Plaintiff filed Plaintiff's Reply Memorandum of Law in Support of Motion for Summary Judgment and in Opposition to Defendant's Motion in the Alternative for Summary Judgment in Defendant's Favor. (ECF No. 284.)

29. The Court held a hearing on the Motion on 28 September 2021. (*See* ECF No. 292.)

30.     On 9 February 2022, Plaintiff filed an Amended Suggestion of Bankruptcy, (ECF No. 295), notifying the Court that Plaintiff filed a voluntary petition for relief under Chapter 7 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina.  (Am. Sugg. Bankruptcy 1.)

31.     On 28 February 2022, a Notice of Appearance was filed in this action by John C. Bircher III, Bankruptcy Trustee for Plaintiff's estate.

32.     On 9 March 2022, the Court held a conference with counsel and the Bankruptcy Trustee via the Court's telecommunication system to discuss the status of this litigation.

33.     The Motion is ripe for resolution.

### III.     LEGAL STANDARD

34.     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c).  "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83 (2000).

35.     The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563 (2008).  The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot

produce evidence to support an essential element of her claim." *Dobson*, 352 N.C. at 83 (citations omitted).

36. "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85 (2000). The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83. However, the nonmovant "may not rest upon the mere allegations or denials of her pleading, but her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant]." N.C.G.S. § 1A-1, Rule 56(e).

## IV.  ANALYSIS

37. It has been made clear to the parties by the Court that (1) Defendant is bound by his stipulations and representations to the Court and Plaintiff and must pay the value of Plaintiff's shares in MGI to Plaintiff; and (2) the only outstanding issue before this Court is the valuation of Plaintiff's shares in MGI as of 16 October 2017.

### A.  **Defendant's Request for Summary Judgment**

38. Defendant's Objection requests that "the Court deny the Plaintiff's Motion, in the alternative, enter judgment in favor of the Defendant and such further relief

as the Court may deem appropriate." (Obj. 3.) Rule 7.2 of the North Carolina Business Court Rules ("BCR(s)") provides that "[e]ach motion must be set out in a separate document." Defendant filed his response to the Motion and his own Rule 56 motion in one document, therefore, Defendant's Objection is not in compliance with BCR 7.2. Accordingly, the Court, in its discretion, does not consider Defendant's request for summary judgment contained in Defendant's Objection to be properly before the Court.

**B.**     **Plaintiff's Request for Summary Judgment**

39. Pursuant to N.C.G.S. § 55-14-31, when a court determines that judicial dissolution is appropriate and the corporation, or another shareholder, subsequently elects to purchase the shares of the shareholder seeking judicial dissolution pursuant to N.C.G.S. § 55-14-30(2)(ii), the court shall not order dissolution but may aid in determining the fair value of the shares in accordance with procedures that the court may provide.

40. In the present case, the Court has not determined that judicial dissolution is appropriate. However, since Defendant made representations to Plaintiff and the Court that he would purchase Plaintiff's shares without a finding of judicial dissolution, the Court concludes that N.C.G.S. § 55-14-31 is nonetheless applicable in this instance. Therefore, the Court finds the developed case law interpreting N.C.G.S. § 55-14-31 and making determinations as to fair value of corporations to be persuasive in this instance. To the extent Plaintiff seeks summary judgment determining that Defendant owes Plaintiff the fair value of her ownership interest in

MGI, Plaintiff's request is **GRANTED** and summary judgment is entered in her favor and against Defendant on liability for purchase of her shares as of the stipulated valuation date.

41. This Court has previously held that the determination of fair value under circumstances such as those presented here is entrusted to the Court's sound discretion. *Finkel v. Palm Park, Inc.*, 2020 NCBC LEXIS 137, at \*21 (N.C. Super. Ct. Nov. 18, 2020) (quoting *Royals v. Piedmont Elec. Repair Co.*, 1999 NCBC LEXIS 1, at \*\*35 (N.C. Super. Ct. Mar. 3, 1999)). However, "fair value" is not defined by statute. *Royals*, 1999 NCBC LEXIS 137, at \*\*34.

42. This Court has recognized that "[t]he Legislature wisely provided for flexibility in determining fair value. Recognizing that every situation will be different, the Legislature did not limit fair value to market value and did not place any limiting parameters on the factors to be considered in determining fair value." *Garlock v. Southeastern Gas & Power, Inc.*, 2001 NCBC LEXIS 9, at \*\*36 (N.C. Super. Ct. Nov. 14, 2001).

43. Fair market value is not the equivalent of "fair value," however it "is a factor to be given heavy weight[, and] it is the starting point for any valuation." *Royals*, 1999 NCBC LEXIS 1, at \*\*35. When courts have relied on fair market value calculations, they have done so due to the independence, sophistication, and reliability of the financial advisors preparing the report. *See Reynolds Am. Inc. v. Third Motion Equities Master Fund Ltd.*, 2020 NCBC LEXIS 35, at \*\*217 (N.C. Super. Ct. Apr. 27, 2020).

44. Plaintiff argues that the fair value of her ownership interest in MGI is $380,640 and requests that the Court enter summary judgment in her favor for that amount. (Pl.'s Mot. ¶ 8.) Plaintiff arrives at this figure in reliance on the Turner Report's findings. (Pl.'s Mot. ¶¶ 2, 7.) Specifically, Plaintiff assumes the MGI enterprise value (that is, the value of the company as a whole) as of the stipulated valuation date and multiplies that value by Plaintiff's ownership share in MGI.[2]

45. Instead of putting forth an expert valuation using methods and data Plaintiff deemed to be reliable, Plaintiff simply asks the Court to disregard the Turner Report's twenty percent (20%) minority discount and thirty percent (30%) marketability discount. (Pl.'s Mot. ¶ 8.) After eliminating these discounts, Plaintiff arrives at a valuation of $380,640. (Pl.'s Mot. ¶ 8.)

46. Puzzlingly, while relying on the Turner Report in her Motion, Plaintiff also states that she "does not agree with all of the methodologies and data relied upon by Mr. Turner to reach his conclusion." (Pl.'s Mot. ¶ 7.) Plaintiff also undermines the accuracy of the Turner Report's underlying data, stating that "[t]he Defendant's expert relied on information provided by Richard Mason without engaging in any independent verification of that information." (Pl.'s Mot. ¶ 3.)

47. Our Supreme Court has held that "[a] court generally possesses the discretion to choose to accord little probative weight to the results of a particular [valuation] analysis if there are legitimate justifications for that choice." *Reynolds Am. Inc. v. Third Motion Equities Master Fund Ltd.*, 379 N.C. 524, 537 (2021).

---

[2] The math is straightforward in this regard: $960,000 (company value) x .3965 (Plaintiff's ownership share) = $380,640.

48.    Understanding that Plaintiff ultimately bears the burden of proof on the issue of fair value, the Court concludes that, based on the record before it on summary judgment, Plaintiff has not carried her burden of proving, for purposes of a summary judgment motion, that the Court should disregard the minority and lack of marketability discounts employed by Defendant's expert.

## V.    CONCLUSION

49.    For the foregoing reasons, the Court hereby **DENIES** the Motion to the extent it seeks entry of a judgment for a sum certain — $380,640.  However, as noted previously, the Court **GRANTS** the Motion to the extent it seeks entry of a judgment of liability for the fair value of Plaintiff's shares in MGI.

50.    As a result of the Court's ruling herein, the parties are hereby **ORDERED** to meet and confer regarding proposed deadlines for setting this matter for trial.  The parties shall advise the Court, by email correspondence sent to the Court's Law Clerk, Ryan Dovel, ryan.t.dovel@nccourts.org, copying all other counsel, on or before Friday, 17 June 2022 regarding their joint or respective proposals as to developing a schedule for a bench trial on the merits.

**SO ORDERED**, this the 13th day of May, 2022.


/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases