Brown v. Onslow Bay Marine Grp., LLC, 2022 NCBC 81.

STATE OF NORTH CAROLINA

ONSLOW COUNTY

ROBERT L. BROWN, JR.; ON POINT
OFFSHORE, LLC; and WILLIAM E.
ECHARD, in their respective capacities
as members of ONSLOW BAY MARINE
GROUP, LLC,

              Plaintiffs,

     v.

ONSLOW BAY MARINE GROUP,
LLC,

              Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 1794

**ORDER AND OPINION ON
DEFENDANT ONSLOW BAY MARINE
GROUP, LLC's MOTION FOR
SUMMARY JUDGMENT**

1.     **THIS MATTER** is before the Court on Defendant Onslow Bay Marine

Group, LLC's Motion for Summary Judgment (the "Motion") filed by Defendant

Onslow Bay Marine Group ("OBMG" or "Defendant") on 13 September 2022. (ECF

No. 43.)  The Motion requests that summary judgment be granted in favor of OBMG

on all claims brought in two cases that were consolidated at the time the Motion was

filed.  Because the cases have since been deconsolidated, this Order and Opinion

addresses the Motion only to the extent it seeks judgment as to the single claim

brought in this case ("*Brown I*") and not the claims brought in a companion case

initiated in New Hanover County Superior Court bearing filing number 21 CVS 2469

("*Brown II*").

2.     For the reasons set forth herein, the Court **GRANTS** the Motion in part.

*Poyner Spruill LLP, by Nicholas J. Ellis and Dylan Castellino, for Plaintiffs*

*Murchison, Taylor & Gibson, PLLC, by Andrew K. McVey, and Bailey & Busby, PLLC by Stephen C. Bailey, for Defendant*

Robinson, Judge.

## I.      INTRODUCTION

3.      Plaintiffs Robert L. Brown, Jr. ("Brown"), William E. Echard ("Echard"), and On Point Offshore, LLC ("On Point") are, or understand themselves to be,[1] minority members of Onslow Bay Marine Group ("OBMG" or "Defendant").  On 23 April 2021, Brown, Echard, and On Point made an inspection demand on OBMG pursuant to N.C.G.S. § 57D-3-04.  Between May and October 2021, OBMG provided some, but not all, of the requested documents.  This lawsuit followed.  Plaintiffs seek a court order compelling Defendant to produce the remaining records requested in their inspection demand and awarding costs incurred by Plaintiffs in pursuing their claim.

## II.      FACTUAL BACKGROUND

4.      The Court does not make findings of fact when ruling on motions for summary judgment. "[T]o provide context for its ruling, the Court may state either those facts that it believes are not in material dispute or those facts on which a material dispute forecloses summary adjudication." *Ehmann v. Medflow, Inc.*, 2017 NCBC LEXIS 88, at *6 (N.C. Super. Ct. Sept. 26, 2017).

5.      OBMG is a manager-managed LLC engaged in the manufacture of center console offshore and tournament edition boats.  (Knight Aff. ¶ 3, ECF No. 44.1.)

---

[1] Whether Plaintiff Robert L. Brown, Jr. and/or On Point Offshore, LLC are members of OBMG is in dispute. However, it is undisputed that Plaintiff William E. Echard is a member of OBMG and has standing to bring the suit under N.C.G.S. § 57D-3-04. (Def.'s Br. Supp. Mot. Summ. J. 7, ECF No. 45.)

6. John Bradley Knight, Jr., ("Knight") is a resident of North Carolina who has a 51% ownership interest in OBMG and is a member-manager thereof. (Knight Aff. ¶¶ 1,7.)

7. Echard is a member of OBMG possessing a 9.8% ownership interest. (Knight Aff. ¶ 9.)

8. Brown is the majority member of On Point. On Point is listed in OBMG's records as owning a 24.5% interest in OBMG, and it is disputed whether such interest constitutes membership or is merely an economic interest. (*See* Knight Aff. ¶ 11.) Plaintiffs contend that both Brown and On Point are members of OBMG, jointly owning the 24.5% interest in question.

9. Maximilian Merrill ("Merrill") and Chris Wiles ("Wiles"), nonparties in this action, are minority economic interest holders in OBMG holding 4.9% and 9.8% economic interests, respectively. (Knight Aff. ¶ 8.)

10. On 17 April 2021, Merrill sent an email to Knight, Echard, and Wiles raising concerns with Knight's conduct as manager of OBMG in, among other things, "using [OBMG] as [his] personal piggy bank." (Pl.'s Ex. 10, 6.) In reply, on 18 April 2021, Knight represented that he had "full documentation of EVERY dollar on a spread sheet" purportedly reflecting cash transactions to and from OBMG (the "Knight Cash Email"). (Pl's Ex. 10, 2.)

11. Jessica Hayes ("Hayes") was the office manager of OBMG from November 2015 until September 2020. (Hayes Aff. ¶ 2.) In this role, Hayes served as OBMG's bookkeeper and reported to Knight. (Hayes Aff. ¶ 4.) Hayes understood that Knight

maintained his own records of cash transactions involving the company. (Hayes Aff. ¶¶ 7–8.)

12. On 23 April 2021, Plaintiffs' counsel sent the Inspection Demand to Defendant. (Knight Aff. Ex. A ["Demand Ltr."].) The Inspection Demand stated "Brown and Echard ha[ve] concerns as to the current state of affairs of [OBMG]" and "[t]he purpose of this request is to enable [Plaintiffs] to understand [OBMG's] current and historical financial condition[.]" (Demand Ltr. 1.) The Inspection Demand requested, among other things, OBMG's tax returns from 2017–20, full-year and year-to-date financial statements, and material information relating to advance boat orders, cash and barter transactions, and OBMG's borrowings (the "Requested Information"). (Demand Ltr. 1–3.)

13. The Inspection Demand requested that the documents be made available by 7 May 2021 and further stated:

> If you would, please send all Requested Information that is available electronically to me [via email]. If any such Requested Information is only available in hardcopy, please overnight complete copies to my attention at [our law office.]
>
> Should you prefer, we would be happy to establish a secure, electronic data room to which [OBMG] may upload any and all Requested Information.
>
> Please let me know immediately if [OMBG] has any questions regarding this letter."

(Demand Ltr. 4.)

14. On 7 May 2021, counsel for OBMG provided[2] Plaintiffs with at least three documents, including OBMG's 2018, 2019, and 2020 tax returns and a current OBMG membership list. (Knight Aff. ¶ 18., Ex. B, 1 ["July 2 Ltr."].)

15. On 2 July 2021, counsel for Defendant confirmed by letter that Defendant had earlier provided Plaintiffs with certain Requested Information: "[y]ou are already in possession of the 2018, 2019 and 2020 tax returns and the current known membership list." (July 2 Ltr. 1.) The letter also set forth a list of documents Defendant intended to provide to Plaintiffs, and objected to the production of "client lists, trade secrets, exact expenditures for boats in the process of being built, suppliers and contracts with current customers[,]" because such documents are "confidential and proprietary information[.]" (July 2 Ltr. 2.)

16. The 2 July 2021 letter did not set forth a date, time, or location for inspection to occur. Nor did OBMG object to sending the Requested Information electronically or by mail.

17. One month later, on 11 August 2021, OBMG mailed to Plaintiffs a list of its current ownership, its state tax returns, its 2017 federal tax return, documents showing indebtedness to Bank of America, documents reflecting barter transactions, and a spreadsheet reflecting amounts paid in mortgage and rent for 175 Sloop Point Road Space, Hampstead, North Carolina. (Knight Aff. ¶ 21, Ex. C, 3.) OBMG supplemented its production by mail on 21 October 2021, enclosing OBMG's balance

---

[2] The record does not disclose the means by which OBMG turned over documents to Plaintiffs on 7 May 2021, whether in person, by mail, or otherwise. The record also contains no evidence that OBMG objected to Plaintiffs' request that documents be transmitted to Plaintiffs' counsel electronically or by mail.

sheets and profit and loss statements from 2017–20. (Knight Aff. ¶ 22, Ex. D). On neither occasion did OBMG object to sending the documents to Plaintiffs by mail.

## III. PROCEDURAL HISTORY

18. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

19. This Action was initiated by Plaintiffs on 21 May 2021 with the filing of the Complaint in Onslow County Superior Court, case number 2021 CVS 1794 ("*Brown I*"). (ECF No. 3.) The Complaint set forth a single claim seeking a court order compelling OBMG to produce corporate records pursuant to N.C.G.S. § 57D-3-04. (Compl. ¶ 23.)

20. On 20 August 2021, this action was consolidated with *Brown II* for discovery, mediation, and all other proceedings except for trial. (*See* Or. Joint Mot. Consolid. ¶ 8.a., ECF No. 18.)

21. Defendant filed the Motion, supporting brief, and exhibits on 13 September 2022. (*See* Def.'s Mot. for Summ. J., ECF No. 43 ["Mot."]; Def.'s Br. Supp. Mot. Summ. J., ECF No. 45 ["Def.'s Br."]; Def.'s Index in Supp. of Mot. Summ. J., ECF No. 44 ["Def.'s Ex."].)

22. Plaintiffs filed their response and exhibits on 13 October 2022 (See Pls.' Resp. Def.'s Mot. Summ. J., ECF No. 57 ["Pl.'s Br."]; Pl.'s Index Opp. Def.'s Mot. Summ. J., ECF No. 56 ["Pl.'s Ex."].)

23. Defendant filed its reply brief on 21 October 2022. (Def.'s Reply Br. Supp. of Mot. Summ. J., ECF No. 60 ["Reply Br."].)

24.     The Court heard oral argument on the Motion on 29 November 2022. (*See* Am. Not. Hearing, ECF No. 59.)

25.     On 1 December 2022, the Court *sua sponte* deconsolidated this action from *Brown II* in all respects.

26.     The Motion has been fully brief, argued, and is ripe for determination.

## IV.     LEGAL STANDARD

27.     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). "A 'genuine issue' is one that can be maintained by substantial evidence." *Dobson v. Harris*, 352 N.C. 77, 83 (2000).

28.     The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563 (2008). The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim." *Dobson*, 352 N.C. at 83 (citations omitted).

29.     "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence

demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85 (2000).

30. The Court must view the evidence in the light most favorable to the nonmovant. *Dobson*, 352 N.C. at 83. However, the nonmovant "may not rest upon the mere allegations or denials of their pleading, but their response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the nonmovant] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmovant]." N.C.G.S. § 1A-1, Rule 56(e).

## V.    ANALYSIS

31. Defendant seeks summary judgment with respect to Plaintiffs' inspection demand, the sole claim for relief in the present case. The Court will address each of Defendants' contentions in turn.

### A.    <u>Membership Status of Brown and On Point Offshore, LLC</u>

32. As a threshold matter, OBMG argues that Brown and On Point are not members of OBMG and therefore do not have inspection rights under N.C.G.S. § 57D-3-04. (Def.'s Br. 7.) OBMG, however, concedes that Echard is a member and is entitled to such inspection rights. (Def.'s Br. 7.) During oral argument on the Motion, counsel for OBMG acknowledged that because Echard is a member entitled to inspection rights, whether Brown or On Point are members is immaterial. The Court agrees. By virtue of Echard's undisputed membership in OBMG and status as a

plaintiff in this case, the Court need not decide the membership status of Brown and On Point unless and until Echard ceases to be a plaintiff in this action.

## B.     Inspection Demand's Compliance with N.C.G.S. § 57D-3-04(e)

33.     OBMG next argues that Plaintiffs' information request is void because it does not comport with § 57D-3-04(e).  Subsection (e) states that "[t]he exercise of a member's rights to inspect and copy the LLC's records is to take place at the LLC's principal office, or other location or locations selected by the LLC, during the LLC's regular hours of operation unless the LLC directs otherwise."  OBMG contends that because Plaintiffs asked that the Requested Information be sent electronically or by mail, (Demand Ltr. 4), Plaintiffs have "disregarded" the statute and, therefore, the Inspection Demand is void as a matter of law.

34.     The Court disagrees.  While Defendant is correct that § 57D-3-04(e) empowers the LLC to establish the location for inspection and copying, with the default location being the LLC's principal office, the record shows that from 7 May 2021 until 21 October 2021, OBMG repeatedly and without objection provided Plaintiffs with Requested Information via mail.  (*See* July 2 Ltr., Knight Aff. Ex. C, Knight Aff. Ex. D.)  Certainly, OBMG could have objected to the Inspection Demand for noncompliance with § 57D-3-04(e) at the time the demand was made.  Considering OBMG's repeated course of conduct and failure to object, however, the Court concludes that OBMG has waived that objection.

## C. OBMG's Compliance with the Inspection Demand

35. OBMG contends that it has furnished all of the Requested Information contemplated by § 57D-3-04 and that Plaintiffs are "unable to point to a category of documents contemplated by the statute and say that OBMG has failed to provide them." (Def.'s Br. 8.) Plaintiffs admit that OBMG has produced a substantial amount of the Requested Information, but they maintain that OBMG "has not provided all of the documents and information pertaining to the cash Knight has taken from the company." (Pl.'s Br. 15.) In particular, Plaintiffs contend Defendant is withholding a spreadsheet allegedly maintained by Knight accounting for "every dollar" of cash transactions between Knight and OBMG (the "cash spreadsheet"). (Pl.'s Br. 15; Pl.'s Ex. 10, 2.) Plaintiffs contend that the Knight Cash Email and the Hayes affidavit demonstrate that Knight kept his own records of cash receipts, and Defendant "cannot now credibly claim" the cash spreadsheet was destroyed.

36. Defendant has submitted sworn testimony that "OBMG has provided Plaintiffs all documents to which they are entitled pursuant to the information rights statute." (Knight Aff. ¶ 25.) At oral argument, counsel for OBMG stated unequivocally to the Court that no such spreadsheet exists. Plaintiffs have not submitted specific evidence to rebut this sworn testimony from OBMG. Instead, Plaintiffs argue that the Knight Cash Email and Hayes affidavit establish a dispute of material fact regarding the existence of Knight's cash spreadsheet, and for that reason, they believe summary judgment should be denied. According to Plaintiffs,

the case should proceed to trial for a jury to determine whether the cash spreadsheet allegedly maintained by Mr. Knight still exists and is in OBMG's custody.

37.     The Court concludes that § 57D-3-04 does not create an independent cause of action for Plaintiffs to obtain a jury determination regarding whether a document currently exists, and if so, who possesses the document.   Companies producing records pursuant to § 57D-3-04 are bound by Rule 11 and the contempt powers of the Court.   Where, as here, Defendant has submitted sworn testimony that it has provided all documents it possesses that are required by the Inspection Demand and the statute, and where Plaintiffs have failed to rebut such sworn testimony with admissible evidence demonstrating that additional responsive documents exist and are in Defendant's possession, custody, or control, no jury issue remains.

### D.     Further Documents Outside Ambit of § 57D-3-04

38.     Plaintiffs contend, in part, that Defendant is not entitled to summary judgment because it has refused to produce a number of categories of documents in its possession related to the operation and financial condition of the entity. Defendant argues that it should not be required to produce certain information requested pursuant to § 57D-3-04(a)(5) ("information from which the status of the business and the financial condition of the LLC may be ascertained") because such information is excessive in breadth and depth and not "reasonably necessary for a reasonable investor to determine the condition of the company." (Def.'s Br. 8–9.)

39.     The information in dispute includes: (1) an exact accounting for advance orders received for 37-foot Tournament Edition boats, (2) documentation of every cash

transaction in excess of $500.00 in the three years prior to the Inspection Demand, (3) all contracts and other documents relating to sale or lease of company property and financial arrangements, (4) all contracts with customers and suppliers, (5) a list of all employees and independent contractors, their classification, salaries, wages, total compensation paid, (6) a description of currently threatened litigation, legal claims, regulatory actions, or other actions and related correspondence. (Def.'s Br. 8–9.)

40. With the exception of the cash spreadsheet that Knight purportedly maintained, Plaintiffs have failed to respond to the objections Defendant raises regarding the categories of information in paragraph 39, *supra*. Accordingly, Plaintiffs have conceded that such categories of information are not necessary to determine the status of the business and financial condition of the Company. (*See* Or. Pls.' BCR 10.9 Dispute, ¶ 16, ECF No. 26.)

41. Additionally, the Court again determines, as it has previously when ruling on discovery disputes in this action, that the documents specifically identified in paragraph 39 are outside the scope of § 57D-3-04(a)(5). Accordingly, Defendant is not obligated to produce them.

## VI. CONCLUSION

42. In sum, although the Court concludes that Defendant initially did not timely produce all documents it was required to produce in response to Plaintiffs' demand for inspection, it further concludes as a matter of law that Defendant ultimately complied with its statutory obligation. Thus, the Court concludes that there is no

disputed issue of material fact as to Defendant's obligation to produce company documents in response to Plaintiffs' document demand.

43. For the foregoing reasons, the Court hereby **GRANTS** the Motion insofar as it seeks judgment that Defendant OBMG has fully complied with its obligations under N.C.G.S. § 57D-3-04.

44. The Court's determination herein is without prejudice to Plaintiffs' claim for costs as permitted by applicable statute. Any such request, however, must be raised, and supported by proper documentation, within sixty days of the entry of this Order.

**SO ORDERED**, this the 12th day of December, 2022.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
for Complex Business Cases